## GAGE *v.* DUDLEY.

64  271
69  184
69  230
64  271
74  273

Items in mutual accounts, within six years next before action brought, constitute of themselves no admission of an unsettled account extend-ing beyond six years, nor any evidence of a promise to pay a balance so as to take the case out of the statute of limitations.

A mere understanding entertained by each party, that any funds in the hands of either should be applied "on the balance of indebtedness, whichever way it might be, at the end of each year," in the absence of any actual application or statement of account, or express promise between them, has not the effect of an application or of a promise to pay such balances.

ASSUMPSIT.    Writ dated May 12, 1882.    Plea, the statute of limitations.    Facts found by a referee.    The plaintiff's specifica-tion was for items of account from 1869 to the date of the writ. The defendant's set-off was for items of account from 1871 to 1879.

No accounting or settlement was ever had by the parties after a settlement in 1871; and there was no special application of any item by either side in payment of any item or items on the other side.    Both parties testified that it was their understanding that any funds in their hands at the end of each year were to be applied on the balance of indebtedness, whichever way it might be, of one to the other.    This was the thought or expectation of each party;

but nothing was ever said by either to the other about it, and neither made a new promise to the other. The referee held that the statute of limitations applies to all items on both sides which accrued more than six years before the date of the writ, and made his finding accordingly.

*Bingham & Mitchell* and *W. G. Buxton*, for the plaintiff.

*Daniel Barnard*, for the defendant. *Blair* v. *Drew*, 6 N. H. 235 (decided in 1833), is contrary to the current authorities of every, or nearly every, other state. *Parker*, J., at that time, although it was not necessary in deciding the case, considered the question upon reason and upon authority, as it then seemed to him. But his conclusions, in the more than half-century which has intervened, instead of being followed by other courts, have been overruled in nearly every other state; and we submit that our court should yield this point to the substantially unanimous judicial opinion of the country.

BINGHAM, J. In assumpsit, if the defendant pleads a set-off, the plaintiff may reply the statute of limitations. Wood Lim. Act., s. 281; *Rollins* v. *Horn*, 44 N. H. 591; *Alsop* v. *Nichols*, 9 Conn. 358. It is not certain that the plaintiff would be required to reply the statute, as it is held in some jurisdictions that when the debt on its face appears to be barred, it cannot be used as a set-off without evidence to take it out of the statute. Wood Lim. Act., s. 601, note. However this may be under the present liberal practice, the replication, though not in time, was properly allowed.

It appears that the parties settled in February, 1871; that the great number of items, unlike in subject-matter, charged in both the specification and set-off, arose at different times in the dealings of the parties between the settlement and the commencement of the suit, and that no settlement was made during this period. The report finds that no new promise was made by either party to pay any item more than six years old at the date of the writ, and that no special application was made of any item by either side in payment of any item on the other side. The referee ruled that the statute barred the accounts of both parties that were over six years old at the date of the writ; and the defendant's exception raises the question as to his account.

On the facts above stated, no error is seen in the ruling; but the referee makes a further finding, on which more difficult questions arise, both as to its meaning and the law. He finds that the understanding of the parties was, that any funds in their hands at the end of each year were to be applied on the balance of indebtedness, whichever way it might be, of one to the other,—that is, it was the apparent thought or expectation of each party, but nothing was ever said by either to the other about it, and neither made

a promise to the other.   It was the common or ordinary under-
standing between any two parties having dealings together for a
series of years, that the account of one shall go to balance the
other.   The finding is ambiguous, especially the main part of it,
to such a degree that it cannot be practically applied to the case;
but when considered in connection with its qualifying adjuncts, the
referee's meaning would seem to be that the common understand-
ing between parties who have mutual dealings for a series of years
is, that the accounts of one will be set off against the accounts of
the other, and that these parties were not an exception to the gen-
eral rule, although they never said anything about it or made a
promise.   This leaves the case to be governed by the same legal
principles that control the great mass of transactions between men,
that depend on the original undertakings, unchanged by new prom-
ises or renewals in any form.

The inquiry is, then, whether the ordinary understanding that
exists between parties at the commencement of mutual dealings,
when nothing is said, that the accounts of one will be set off against
the other, or go to balance those of the other, will take the account
out of the operation of the statute of limitations.   A leading case
on this point is *Catling* v. *Skoulding*, 6 T. R. 189, in which it was
decided that if there is a mutual account of any sort between the
parties for any item of which credit has been given within six
years, that is evidence of an acknowledgment of such an open ac-
count, and of a promise to pay the balance, that will take it out of
the statute.   Lord *Kenyon* said,—"It is not doubted but that a
promise or acknowledgment within six years will take the case out
of the statute; and the only question is, whether there is not evi-
dence of an acknowledgment in the present case.   Here are mu-
tual items of account; and I take it to have been clearly settled,
as long as I have any memory of the practice of the courts, that
every new item and credit in an account given by one party to
the other is an admission of there being some unsettled account
between them, the amount of which is afterwards to be ascertained,
and any act which the jury may consider as an acknowledgment of
its being an open account is sufficient to take the case out of the
statute."   *Catling* v. *Skoulding* is in effect the case now before the
court, in which no acknowledgment exists since the opening of
their accounts other than that it has been a mutual running account.
Neither has there been an application made of any item in either
account on the account of the other, or any item in it, and neither
ever said to the other that the account of one should go to balance
the other.   This leaves nothing to support the referee's finding, as
to the apparent thought or expectation of the parties, but the fact
that the accounts were mutual, as in *Catling* v. *Skoulding*.

The Statute of 21 James, *c.* 16, *s.* 3, was in substance enacted
in this state in 1825.   Laws of 1830, title 16, *c.* 3, *s.* 1.   "All
actions of account and upon the case, other than such as concern

the trade of merchandise between merchant and merchant, their factors and servants; all actions of debt grounded upon any lending or contract not under seal; all actions of debt for arrearages of rent; and all actions of assault, menace, battery, wounding, and imprisonment; or any of them which shall be hereafter sued or brought,—shall be commenced and sued within the time hereinafter limited, and not afterwards, to wit, the actions of account, and actions of debt and actions upon the case, other than for slander, and said actions of trespass, detinue, and replevin for cattle and goods, and said actions of trespass *quare clausum fregit*, within six years next after the cause of such actions or suits, and not after." In England, the exception as to merchants' accounts was held to include mutual running accounts. *Cranch* v. *Kirkman*, 1 Peake *121. In *Catling* v. *Skoulding* this class of accounts was taken out of the statute on the additional ground before stated. The doctrine of those cases, as to acknowledgments and new promises, was generally adopted in common-law jurisdictions for a time at least. In 1827–'28 the cases of *Tanner* v. *Smart*, 6 B. & C. 603, and *Bell* v. *Morrison*, 1 Pet. 351, were decided, in which it was held that if no express promise was proved, but a promise is to be raised by implication from the acknowledgment of the party, it ought to contain an unqualified and direct admission of a present subsisting debt which the party is liable and willing to pay. *Hart* v. *Prendergast*, 14 M. & W. 741, 744. In 1830, in *Russell* v. *Copp*, 5 N. H. 154, the doctrine of *Tanner* v. *Smart* and *Bell* v. *Morrison* was affirmed, and held to be the law of this state. In 1839, in *Blair* v. *Drew*, 6 N. H. 235, 247, the court say,—" Consistently with the principles of repeated decisions in this court, that in order to raise a new promise by implication from an acknowledgment, it must contain a direct and unqualified admission of a subsisting debt which the party is liable and willing to pay, we cannot hold that one item in an account has of itself any force or effect to take other items, which would otherwise be barred, out of the statute." The opinion is by *Parker*, C. J., and is a review of the English decisions on the Statute of James; and upon principle he held that items in mutual accounts, within six years next before action brought, constitute of themselves no admission of an unsettled account extending beyond six years, nor any evidence of a promise to pay a balance so as to take a case out of the statute of limitations. The case also decides that the exception in the Statute of James as to demands concerning the trade of merchandise between merchant and merchant, their factors and servants, does not extend to accounts between parties not merchants, and respecting transactions which do not possess a mercantile character.

It is said, however, that this case has not been followed, and the court is asked to reëxamine it. It may be true, literally, that the case has not been approved in other jurisdictions to the extent that

their courts have reversed their previous decisions and approved of this; but it is true that the doctrine of *Catling* v. *Skoulding*, as before stated, has disappeared in England and in most of the states by statute, and it is now held that no new promise or acknowledgment will take a case out of the statute unless it is in writing, signed by the party chargeable thereby.  3 Pars. Cont. 67 ; *Cottam* v. *Partridge*, 4 M. & G. 274, 277, 291 ; *Chace* v. *Trafford*, 116 Mass. 529 ; *Richardson* v. *Cook*, 37 Vt. 599.  This state has adhered to the doctrine of *Blair* v. *Drew*, approving it in *Livermore* v. *Rand*, placing the decision of the case on the reasoning of *Blair* v. *Drew*, and holding that the payment of money generally upon an account should be applied in payment of the earliest charges in it not barred by the statute ; that such payment is not sufficient evidence that the account is unsettled, or to take its items out of the statute of limitations : and that the only inference that can be drawn from the mere fact of payment is, that the party who made it admitted that sum to be due, but nothing more.  The doctrine on which *Blair* v. *Drew* stands, that an acknowledgment, in order to take a case out of the statute, must contain an unqualified admission of a previous subsisting debt, which the party is liable and willing to pay, has become fundamental.  *Ventris* v. *Shaw*, 14 N. H. 422, 425; *Douglas* v. *Elkins*, 28 N. H. 26, 33 ; *Manning* v. *Wheeler*, 13 N. H. 486 ; *Holt* v. *Gage*, 60 N. H. 536, 541.  In *Holt* v. *Gage*, *Smith*, J., after giving the early English rule and citing the authorities, states the present rule, cites the authorities, and adds that " the expression of a willingness to pay is an important part of the evidence, and cannot be dispensed with."  *Blair* v. *Drew* has been cited by the court as authority since it was decided, when occasion required, and without criticism.

The legislature have recognized the doctrine of *Blair* v. *Drew*, and conformed their action to it.  Laws of 1840, *c.* 504, *s.* 1, repealed the clause in the act of 1825, excepting from its operation actions of account wherein the trade of merchandise between merchant and merchant, their factors and servants, was concerned, which, with the construction given this clause in *Blair* v. *Drew*, limiting it literally to accounts as to merchandise between merchant and merchant and their servants, left no class of accounts that were not barred in six years after the cause of action accrued, item by item ; and the Revised Statutes, *c.* 181, *ss.* 3, 4, place the statute of limitations in form, after taking from the statute of 1825 the clause repealed in 1840.  The statutory law is now essentially the same as to actions of accounts.  G. L., *c.* 221, *s.* 3.  This statute, and the decision in *Blair* v. *Drew*, and the subsequent cases in harmony with it, constitute the law of the state on the question.  If the only other interpretation that the findings of the referee appear susceptible of is adopted, that the parties understood, at the commencement of the dealings in February, 1871, that at the end of each year the accounts were to be stated, a balance struck and

applied on a balance of past indebtedness, the dealings of each year would constitute a transaction by itself, and the balance would be a new item on which a right of action accrued at the end of each year that would be barred in six years. When the balance was struck, it was no longer the open running account, but a closed account stated, on which the statute would run if not applied as expected. Neither would the balance be a new item in a new account, as such was not the agreement. It formed no item in the open running account. *Bank* v. *Knapp*, 3 Pick. 96, 109; *Belchertown* v. *Bridgman*, 118 Mass. 486, 487. But in this case no balance has ever been struck. No part of the annual statement of accounts has ever been performed, or the understanding in any way recognized or renewed by any acknowledgment or new promise as to past transactions. *Brown* v. *Latham*, 58 N. H. 30. The agreement as to stating and applying the account annually cannot be discarded in part and retained in part: it must stand or fall as a whole.

*Judgment for the plaintiff.*

CARPENTER, J., did not sit: the others concurred.