Hillsborough, }
June 4, 1907. }

## BARKER v. HEATH.

A direct and unqualified admission by a debtor within six years prior to the
commencement of an action, of a subsisting debt which he is liable and
willing to pay, is sufficient evidence of a new promise to prevent the statu-
tory bar to a recovery.

If the admission of a debt is conditional, the statute of limitations will ope-
rate so far as it may in view of the condition; and in such case it is incum-
bent upon the creditor to show that the condition has been fulfilled or com-
plied with, to entitle him to the implication of a new promise.

A payment upon a promissory note by the maker, under circumstances which
show that he understood it to be partial only and which do not indicate his
unwillingness to pay the balance, is evidence from which, if there is noth-
ing to control it, a jury should find a new promise.

Indorsements upon a note are not admissible as evidence of partial payments
to avoid the bar of the statute of limitations, unless they are shown to be
in the handwriting of the maker of the note, or their genuineness and
truthfulness are otherwise established.

Evidence that the maker of a note made a partial payment thereon and stated
that he would pay the balance as soon as he was able does not warrant a
finding of an absolute and unconditional promise.

Where the promise of a debtor to pay as soon as she was able is relied upon to
avoid the bar of the statute of limitations, evidence of an ante-nuptial con-
tract between herself and her husband and the provisions of his will in her
favor are admissible as tending to prove her financial ability.

ASSUMPSIT, upon the defendant's promissory note for $734.52,
dated April 1, 1895, payable to the plaintiff on demand with inter-
est. The writ is dated November 2, 1905. Plea, the statute of
limitations; replication, a new promise within six years. Trial by
jury and verdict for the plaintiff. Transferred from the September
term, 1906, of the superior court by *Pike*, J.

The following indorsements are upon the back of the note:
April 10, 1895, $5; September 19, 1895, $5; October 16, 1895,
$5; December 16, 1895, $5; September 19, 1896, $3; August 25,
1898, $2; December 26, 1899, $2. The plaintiff testified as fol-
lows: He received the foregoing sums from the defendant at the
dates mentioned, and made the indorsements in her presence. At
the time of the last payment the defendant said, in substance, that
it was all she could give him at that time; that she would give
him more as soon as she could and would pay him just as fast as
she could; that she was having a hard time, her boarders had left

her, her eyes were troubling her, and she had to go to an oculist; it was taking her money, but she would pay him as fast as she could. At the dates of the indorsements she always promised to pay as fast as she could and as soon as she was able, and wanted him to be easy with her. In a conversation subsequent to December 26, 1899, she said she had no money for him then, but would give him some just as soon as she could.

The defendant's evidence tended to prove that she did not make either of the last two payments indorsed on the note; that she did not promise the plaintiff at any time that she would pay the balance of the note, because she knew it was impossible for her to do so; and that she did not promise him on December 26, 1899, or at any subsequent date, that she would pay the note as soon as she was able, or as soon as she could, or promise anything to that effect.

At the close of the plaintiff's evidence the defendant moved for a nonsuit, on the ground that there was no evidence that the plaintiff could pay, or was able to pay, the note when the action was brought. The motion was denied, subject to exception. The defendant's offer to prove that she was physically unfit for hard labor for several years prior to November 22, 1905, was rejected, subject to exception. Upon cross-examination, the plaintiff's counsel was permitted, subject to exception, to ask the defendant whether she did not intend to keep the note alive by her payments and promises in 1897, 1898, and 1899. She replied: "I paid him what I could. I knew I never could pay it in the world, and I don't know why I should promise to pay it when I knew I never could. When he came to me for money I gave him what I could."

The defendant married early in the fall of 1905, and her husband died a few months later. The plaintiff put in evidence an ante-nuptial agreement between the defendant and her husband, in effect, that the latter would leave the defendant, by will, certain real estate, and also the provision of the husband's will by which a devise of real estate, worth $5,500 or $6,000 and incumbered for about $3,500, was made to the defendant. The defendant excepted to the testimony, on the ground that it was uncertain, under the agreement and will, whether she took a life estate or a fee in the realty. Before the evidence was closed, the court came to the conclusion that the law of this state relating to the character of the defendant's new promise was as stated subsequently in the charge to the jury. The counsel, understanding that such was the court's view of the law, made no comments in their closing arguments to the jury upon the evidence relating to the defendant's ability to pay. The defendant moved to set aside the

verdict because this evidence, not being excluded excepting by the effect of the charge, was incompetent and prejudicial. The motion was denied, subject to exception.

The court, after instructing the jury that their verdict must be for the defendant unless she, by her acts or promises, gave the plaintiff to understand within six years that she recognized the existence of the note and intended to pay it, further instructed them that the promise must be absolute, or, if conditional, that the condition must have been fulfilled; and that a promise by the defendant to pay as soon as she could, or when she was able, would be regarded by the law of this state as an absolute promise. Continuing, the court said: " So if you find that within six years she said, ' I will pay it as soon as I can,' or ' as soon as I am able,' then you will regard it as having been an absolute and unqualified promise on her part." To this portion of the charge the defendant excepted.

*Wason & Moran*, for the plaintiff.

*Doyle & Lucier*, for the defendant.

CHASE, J. It was held in the earlier cases of assumpsit, in this state, that while a simple acknowledgment of a debt would not prevent the statute of limitations from operating upon it, such acknowledgment was evidence from which, if there was nothing to rebut it, a jury might find a new promise. If the acknowledgment was accompanied by a condition, limitation, or qualification of any kind, its effect as evidence was modified correspondingly. *Stanton* v. *Stanton*, 2 N. H. 425; *Buswell* v. *Roby*, 3 N. H. 467; *Atwood* v. *Coburn*, 4 N. H. 315. Doubts were entertained whether these decisions were in accord with the real intent and purpose of the statute, and it was held that the principle of them could not be applied in actions of debt. *Rice* v. *Wilder*, 4 N. H. 336; *Exeter Bank* v. *Sullivan*, 6 N. H. 124, 133; *Downer* v. *Shaw*, 28 N. H. 151. In the later cases it has been uniformly held that a direct and unqualified admission by a debtor, within six years prior to the commencement of the action, of a subsisting debt which he is liable and willing to pay, is sufficient evidence of a new promise, and will prevent the statutory bar to the recovery of the debt. The law on this point has been so frequently and uniformly stated in the foregoing form, substantially, that the statement may be regarded as a well settled rule of law. If the admission be conditional, limited or qualified in any way or to any extent, the new promise will have a like quality, and the statute will operate so far as it may in view of the condition, limitation, or qualification.

In case there is a condition, the creditor must show that it has been fulfilled or complied with, to entitle himself to the implication of a new promise. *Russell* v. *Copp*, 5 N. H. 154; *Exeter Bank* v. *Sullivan*, 6 N. H. 124, 135, 136; *Manning* v. *Wheeler*, 13 N. H. 486, 487; *Ventris* v. *Shaw*, 14 N. H. 422; *Butterfield* v. *Jacobs*, 15 N. H. 140; *Downer* v. *Shaw*, 28 N. II. 151, 153; *Dodge* v. *Leavitt*, 59 N. H. 245; *Stowell* v. *Fowler*, 59 N. H. 585; *Holt* v. *Gage*, 60 N. H. 536; *Pickering* v. *Frink*, 62 N. II. 342; *Gage* v. *Dudley*, 64 N. II. 271, 275; *Engel* v. *Brown*, 69 N. H. 183, 184; *Mooar* v. *Mooar*, 69 N. H. 643; *Rossiter* v. *Colby*, 71 N. H. 386, 387. A partial payment of a promissory note by the maker, under circumstances which show that he understood it was partial only, and which do not indicate an unwillingness on his part to pay the balance, is evidence from which, if there is nothing to control it, a jury should find a new promise. Indorsements upon a note will not be received as evidence of such payments unless shown to be in the handwriting of the maker of the note, or there is other evidence of their genuineness and truthfulness. *Exeter Bank* v. *Sullivan*, 6 N. H. 124; *Kenniston* v. *Avery*, 16 N. H. 117; *Chapman* v. *Boyce*, 16 N. H. 237; *Jones* v. *Jones*, 21 N. H. 219; *Brown* v. *Latham*, 58 N. II. 30; *Engel* v. *Brown*, 69 N. H. 183.

According to the plaintiff's testimony, the defendant made a payment of two dollars upon the promissory note in suit within six years of the time when the action was brought, and said, in substance, at the time of making the payment, that it was all she could then pay,—that she would pay more as soon as she could,—would pay just as fast as she could on the note. This testimony, if credited by the jury, would justify them in finding that the defendant understood she was making a partial payment upon a promissory note which she regarded as a subsisting debt that she was liable to pay, and was willing to pay as fast as she could or was able. Her statements relating to losing her boarders, and to the extraordinary expenses to which she was subjected by reason of the trouble in her eyes, tend to prove that her willingness to pay was conditional and depended upon her future pecuniary ability. In effect, she promised that she would make payments on the note as fast as her pecuniary ability would enable her to do so. The later statement in evidence was to the same effect.

In *Butterfield* v. *Jacobs*, 15 N. H. 140, 141, the court said: "Where a person, on being applied to for payment of a debt, declares his inability to pay it, but promises to pay it when he shall become able, the happening of the contingency is, in its nature, susceptible of being proved. His pecuniary ability is a

matter of fact, no more indefinite nor uncertain than most facts ordinarily in controversy. Such a promise is clearly conditional, dependent on the happening of a future event. Evidence of the promise and of the pecuniary ability has, therefore, been held sufficient to take a case out of the operation of the statute." The defendant in that case promised that, if he was not arrested in an action upon the note as was threatened, he would go to work at his trade and would pay the debt as fast as he could; and it was held that his language was too uncertain and indefinite to constitute a conditional promise to pay when he should be able, and that the promise was absolute. To the same effect is *First Cong. Society* v. *Miller*, 15 N. H. 520. The reasoning by which these decisions were reached is not satisfactory. It is difficult to understand why the principles stated in the foregoing quotation from the opinion in the first case—which are believed to be sound—did not apply to the facts of the cases, and why they should not have governed the decisions. The mere omission of the debtors to expressly state their inability to pay the debts presently does not seem sufficiently to differentiate the cases from the case described in the quotation. While it is possible that the debtors may have had in mind, as the condition of their promises, their convenience in view of their other obligations, or in view of contemplated speculations or purchases, it is highly probable that pecuniary ability to pay the debt was the contingency they intended to attach to their promises, the same as would have been apparent if they had expressly declared their present inability. However this may be, it is quite clear that if the plaintiff's testimony in the present case is believed, the defendant's willingness to pay the balance of the note depended upon her pecuniary ability to pay it. Recent cases fully justify this view. *Stowell* v. *Fowler*, 59 N. H. 585; *Rossiter* v. *Colby*, 71 N. H. 386. See, also, *Atwood* v. *Coburn*, 4 N. H. 315, 318; *Betton* v. *Cutts*, 11 N. H. 170; *Manning* v. *Wheeler*, 13 N. H. 486. The defendant's exception to the charge of the court must, therefore, be sustained.

The testimony introduced by the plaintiff relating to the antenuptial agreement between the defendant and her late husband, and the provision of the husband's will in her favor, had a tendency to prove that she possessed pecuniary ability. The nature of the estate was material only as showing the extent of such ability. The testimony was relevant to the issue and competent. It, in connection with the other evidence introduced by the plaintiff, justified the denial of the defendant's motion for a nonsuit. The foregoing views of the law render immaterial the exception to the denial of the defendant's motion to set aside the verdict.

No error is perceived in the ruling relating to the rejection of

the defendant's offer to prove her physical condition prior to November, 1905, or to the ruling relating to the defendant's cross-examination. It would seem, at least, that the court, in the exercise of his discretion, might properly rule as he did.

*Exceptions sustained in part: verdict set aside.*

All concurred.