## J. O. BENTON v. MAY BENTON.

No. 15,596.    (97 Pac. 378.)

### SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Time of Payment Not Conditional.* A written instrument by which the maker acknowledges an indebtedness and agrees to pay it as soon as he can is to be construed as a promissory note payable within a reasonable time.

2. PLEADINGS—*Action on a Note—Defendant's Financial Ability to Pay.* In an action upon such an instrument the plaintiff is not required to plead that the defendant has the financial ability to pay it.

3. ——— *Want of Consideration.* A promissory note recited as its consideration a personal indebtedness owing by the defendant to the plaintiff. In an action thereon the answer alleged that the note was given without consideration, and set out additional facts showing that at the time of its execution the defendant held the amount of the note in trust for the plaintiff and another person. *Held,* that the answer was good as a plea of want of consideration, and that the recital of a personal indebtedness in the note did not conclusively establish a settlement of the trust.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed June 6, 1908. Reversed. Opinion denying a petition for a rehearing filed October 10, 1908.

*E. D. Woodburn, F. T. Woodburn,* and *A. E. Crane,* for plaintiff in error.

*Z. T. Hazen,* and *R. H. Gaw,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: But two questions are presented in this case—whether a petition stated a cause of action, and whether an answer stated a defense or a partial defense. The action was brought by Mrs. May Benton against J. O. Benton. The petition, which was filed May 25, 1906, merely declared upon a written instrument in these words:

"ONAGA, KAN., 2-24-1904.

"In the matter of the trusteeship of H. H. Benton and myself, I hereby acknowledge that I am personally indebted to Mrs. May Benton to the amount of $5993.62, which I agree to pay as soon as I can, together with annual interest at the rate of 6 per cent. per annum.

J. O. BENTON."

The defendant maintains that the obligation he assumed in signing this was to pay the amount named only when he should be financially able to do so, and that it was incumbent upon the plaintiff to plead the existence of that condition to show that the paper had matured. The plaintiff contends that the words "as soon as I can" are too vague and indefinite to fix a time of payment, and that the note was therefore payable within a reasonable time.

Courts generally hold that a right of action does not accrue upon a promise to pay when the debtor is able or when he can until such time as he shall have the financial ability to make payment, and therefore that in declaring upon such a promise the pleader must allege the existence of that condition. A number of decisions to that effect are gathered in volume 8 of Words and Phrases Judicially Defined, at page 7441, in volume 33 of the American Digest, Century edition, c. 1125, section 609, paragraphs *c* and *l*, and in volume 2 of Lewis's edition of Greenleaf on Evidence, section 440, note 3. The following are additional cases to the same effect: *Veasey v. Reeves*, 6

Ind. 406; *Barnett v. Bullett*, 11 Ind. 310; *Stanton's Administrator and Heirs v. Brown*, 36 Ky. *248; *Eckler v. Galbraith & Lail*, 75 Ky. 71; *Martin v. Ferguson*, 3 Ky. Law Rep. 445; *Chism v. Barnes*, 104 Ky. 310, 47 S. W. 232, 875; *Mattocks v. Chadwick*, 71 Me. 313; *Halladay v. Weeks*, 127 Mich. 363, 86 N. W. 799, 89 Am. St. Rep. 478; *Denney & Co. v. Wheelwright & Co.*, 60 Miss. 733; *Barker v. Heath*, 74 N. H. 270, 67 Atl. 222; *Cocks v. Weeks*, 7 Hill (N. Y.) 45; *Ingersoll v. Rhoades*, Hill & Den. Supp. (N. Y.) 371; *Work v. Beach*, 13 N. Y. Supp. 678; *In re Knob*, 78 N. Y. Supp. 292, 38 Misc. Rep. 717; *Tebo v. Robinson*, 100 N. Y. 27, 2 N. E. 383; *Cooper v. James*, 128 N. C. 40, 38 S. E. 28; *Nelson v. Bonnhorst*, 29 Pa. St. 352; *Scott v. Thornton*, 104 Tenn. 547, 58 S. W. 236; *Ruzeoski v. Wilrodt* (Tex. Civ. App. 1906), 94 S. W. 142; *Wright v. National Bank*, 31 Tex. Civ. App. 406, 72 S. W. 103.

In *Kincaid v. Higgins*, 5 Ky. 396, a contrary doctrine is announced in these words, which, however, seem to be in conflict with the later utterances of the Kentucky court:

"A promise to pay as soon as the debtor possibly can, is in the contemplation of law a promise to pay presently. The law supposes every man able to pay his debts, and if the ability to pay was a question to be tried, the only practicable mode of trial is per execution, and of this it is not yet too late for the defendant in the court below to have full benefit." (Page 397.)

In the collection in Words and Phrases already referred to four cases are cited which are against the general trend of the decisions. One of these (*First Cong. Soc. in Lyme v. Miller*, 15 N. H. 520) has recently been disapproved, if not formally overruled (*Barker v. Heath*, 74 N. H. 270, 67 Atl. 222). The others are *Horner et al. v. Starkey, Adm'x, etc.*, 27 Ill. 13, 14; *Norton v. Shepard*, 48 Conn. 141, 142, 40 Am. Rep. 157; *Cummings et al. v. Gassett*, 19 Vt. 308, 310. To the minority list may perhaps be added: *Walker v.*

*Freeman,* 209 Ill. 17, 70 N. E. 595, and *Rolfe v. Pilloud,*
16 Neb. 21, 19 N. W. 615, 970.

In most of the cases referred to the question pre-
sented was whether one who, for the purpose of avoid-
ing the bar of the statute of limitations, relies upon a
written promise of his debtor to pay when able must
show that the promisor's financial condition is such as
to enable him to meet the obligation.   Possibly a dis-
tinction might be made based upon that fact, although
no reason is apparent why the rule adopted, if sound,
should not apply to an original contract as well as to
one made in renewal of a former obligation.   Some of
the cases seem to recognize a difference between the
expressions "as soon as I am able" and "as soon as I
can."   The latter form, being more informal and collo-
quial, may perhaps be regarded as a shade less definite,
but the difference is too slight to justify a refusal to
give it the same effect as the former.   Notwithstand-
ing the number of adjudications apparently to the con-
trary, we are of the opinion that the instrument here
sued upon should be regarded as a promissory note
payable within a reasonable time.   In *Jones v. Eisler,*
3 Kan. 134, action was brought upon an instrument
reading as follows :

"$237.37.          Ottawa Creek, April 20th, 1860.
"For value received (in cutting stone) by Gouliep
Anders, I promise to pay when I receive it from gov-
ernment for losses sustained in August, 1856, or as soon
as otherwise convenient, the sum of two hundred and
thirty-seven dollars and thirty-seven cents.
                                          John T. Jones."

The court said :

"The first question presented by the record is, When
did the note sued on become due?   The note is not a
conditional one.   The maker owed the payee, who had
performed labor for him.   He declares in the paper
that he has received the consideration, which all must
admit was a valuable one.   The existence of the debt
was not made to depend upon a condition or contin-
gency.   Everything necessary to constitute a promissory

24—78 KAN.

note, except the time of payment, is clearly expressed. As to the time the language is peculiar. It could not have been contemplated that if Jones never got his money from the government, or never should be in a situation when he could conveniently pay, that the money never was to be payable. Jones evidently expected within a reasonable time to get the money from the government, or, failing in that, within a like time it would otherwise be convenient to pay. After having performed work to the full amount of the note, it could not have been intended that Anders should never get his money unless Jones got his from the government or should find it otherwise convenient to pay. The intention of the parties doubtless was that it should in any event be payable in a reasonable time, and such is the legal effect of the instrument." (Page 138.)

This reasoning applies with equal force in the present case. It is true that so far as the actual decision is concerned a distinction could readily be made based upon the difference between a promise to pay when one should be able and a promise to pay when it should be convenient. The latter form is held to be tantamount to an agreement to pay within a reasonable time, upon the theory that otherwise the practical effect would be to give the promisor the option to refuse payment altogether. (*Smithers v. Junker*, 41 Fed. 101, 7 L. R. A. 264, and cases there cited. See, also, *Kreiter v. Miller*, I Penny. [Pa.] 46, and 7 Cyc. 857, par. *d*.) But the argument quoted is as convincing in the one case as in the other. A note in which the maker without qualification acknowledges an indebtedness to the payee and promises to pay it as soon as he can, when subjected to a reasonable interpretation, can not be construed as a conditional contract—as a contract to pay only in case he shall thereafter accumulate a certain amount of property, otherwise not. The mere admission of the debt is sufficient to establish an absolute legal liability, lacking only the element of maturity to make it available as a cause of action. It is entirely inconsistent with the spirit and purpose of

the engagement to suppose for a moment that the parties contemplated that the avowed obligation should never be capable of enforcement, even to the extent of the obligor's ability to pay, unless he should become financially able to meet the entire obligation at once.

The trial court held that the petition stated facts sufficient to constitute a cause of action, and sustained a demurrer to a count of the answer which set out in detail the transaction out of which the instrument originated and alleged that it was given without consideration. The answer would seem to be good as a plea of want of consideration, unless the detailed facts showed affirmatively the existence of a good consideration. The facts so pleaded were substantially as follow: A. H. Benton (a son of the defendant) died testate in February, 1898, leaving a widow, the plaintiff herein (to whom shortly thereafter a child was born), and a minor son, who is not yet of age. The will, which was duly probated, reads in part:

"I . . . make the following disposition of my property . . . ten thousand dollars held in the New York Life disposed of as follows:

"(1) Two thousand dollars to unborn child at its majority.

"(2) Eight thousand dollars to wife, all of which is to be held in trust by J. O. and H. H. Benton [another son of the defendant] without bond—they to pay heirs such rate of interest as shall be agreed upon, until children become of age—and she remains unmarried—in such case money shall fall to my legal heirs."

The trust referred to was accepted by the trustees, the money was paid over to them, and an agreement was made fixing 7 per cent. as the rate of interest. The posthumous child lived but a short time. About four years before the beginning of the action the plaintiff was married to H. H. Benton. The sum named in the note sued on was the amount of the trust fund then in the hands of the defendant.

We do not at this time pass upon the interpretation

or effect of the will, for no definite question with respect thereto has been argued. The purpose of the testator seems to have been that the trustees should hold the $8000 until the children became of age, in the meantime paying interest to them and their mother, and then turn the principal over to her unless she had remarried, in which case it should be divided among the three. At all events the children were intended to be beneficiaries of the trust to some extent, and the surviving child has apparently an interest in its continuance. In the brief of the plaintiff the situation presented by the pleadings is said to be:

"That certain trust funds had been paid over to J. O. Benton, that a settlement of the trusteeship was afterward had, and as a result of that settlement J. O. Benton became 'personally indebted' to May Benton in the sum of $5993.62, with interest. The wording of the instrument sued on clearly suggests this explanation of the transaction. Since J. O. Benton has himself declared the indebtedness to be a personal indebtedness of himself to May Benton, the court will not assume the existence of a contradictory state of facts, and, in the absence of an allegation of fraud or mistake, will not permit to be alleged or proven a state of facts which contradicts that written declaration of J. O. Benton. In other words, the court will assume that the indebtedness sued on is, in fact, a personal indebtedness, as J. O. Benton has declared it to be, and, if necessary in construing the instrument, will also assume that there had been a valid settlement of a previously existing trusteeship, resulting in the kind of an obligation which J. O. Benton declares it to be—a personal indebtedness."

The difficulty in accepting this reasoning is that the answer not only sets out the facts with regard to the will and the proceedings thereunder, but goes further and alleges that apart therefrom there was no consideration for the instrument sued upon, thereby in effect pleading that no valid settlement of the trust had been had. Possibly the mere giving of the note and the bringing of an action upon it might be construed

as a termination of the trust, as between the plaintiff and defendant, who were competent to act for themselves. But the surviving son is still a minor and could not be bound by mere consent to a transfer of the trust fund, even if such consent were shown. The recital in the note that the defendant is personally indebted to the plaintiff may be good evidence against him of a settlement of the trust, but it is not conclusive. The statement of consideration made in a written contract may ordinarily be contradicted. (9 Cyc. 368; 6 A. & E. Encycl. of L. 767, *et seq.;* 11 Cent. Dig., c. 200; 4 Wig. Ev. § 2433.) There is nothing contractual about this feature of the present agreement; it is tantamount to a formal acknowledgment of value received.

The specific facts stated in the answer do not show an indebtedness of the defendant to the plaintiff, at least not to the extent of the amount named in the note; therefore the allegation that the note sued on was not supported by any consideration raised an issue.

The judgment is reversed and the cause remanded for further proceedings.

---

OPINION DENYING A PETITION FOR A REHEARING.

### SYLLABUS BY THE COURT.

WILLS—*Construction.* Upon a question involving the interpretation of a part of a will reading "I . . . make the following disposition of my property . . . eight thousand dollars to wife, all of which is to be held in trust by J. O. and H. H. Benton without bond—they to pay heirs such rate of interest as shall be agreed upon, until children become of age—and she remains unmarried—in such case money shall fall to my legal heirs," *held,* that the words "in such case" are equivalent to "in case she remarries."

The opinion of the court was delivered by

MASON, J.: In the opinion heretofore filed in this case this language was used:

"We do not at this time pass upon the interpretation or effect of the will, for no definite question with re-

spect thereto has been argued. The purpose of the testator seems to have been that the trustees should hold the $8000 until the children became of age, in the meantime paying interest to them and their mother, and then turn the principal over to her unless she had remarried, in which case it should be divided among the three. At all events the children were intended to be beneficiaries of the trust to some extent, and the surviving child has apparently an interest in its continuance."

In a petition for a rehearing it is argued that what is said as to the apparent purpose of the testator is in effect an interpretation of the will (and a mistaken interpretation), and will be regarded as binding upon the trial court should the question hereafter arise. As appears from the words quoted, the actual decision was made to turn upon the fact that the surviving child had at all events an interest in the preservation of the trust until he reached his majority, in order that he might continue to receive a revenue from the fund until that time, whether or not he was entitled to any of the principal. But a further consideration of the concluding paragraph of the will makes the matter that was confidently relied upon seem quite as doubtful as the one that was referred to as a mere probability. The entire will reads as follows:

"I, A. R. Benton, do hereby make the following disposition of my property, should I never recover.

"(1) Three thousand ($3000) dollars life-insurance held in Modern Woodmen of America—to be divided as follows:

"To father and brother H. H. one thousand dollars—($1000).

"To my son Glenn two thousand dollars ($2000) at his majority.

"Ten thousand dollars held in the New York Life disposed as follows:

"(1) Two thousand dollars to unborn child at its majority.

"(2) Eight thousand dollars to wife, all of which is to be held in trust by J. O. and H. H. Benton without

bond—they to pay heirs such rate of interest as shall be agreed upon, until children become of age—and she remains unmarried—in such case money shall fall to my legal heirs.

"The balance of my effects and personal property—after all expenses are paid—to be divided among my heirs and representatives according to the laws of the state of Kansas.

"In case of the death of either my son Glenn during his minority or in case of the still-birth of unborn child or its birth and death before majority all payments of interest to said children or any one of them or either of them shall cease and the several sums bequeathed them shall be divided as heretofore."

The opinion was written upon the assumption that the final paragraph meant merely that upon the death of one of the two children the payment of interest on its account should cease and its share should fall into the common fund. The language used, however, is susceptible of the further meaning that after the death of one child no payments of interest should be made to the other. The present case, therefore, can not be decided without interpreting one or the other of two clauses of the will, each of which is involved in considerable obscurity. We prefer, however, to pass upon that to which our attention was first attracted, and therefore recur to the part of the will quoted in the original opinion:

"All of which is to be held in trust by J. O. and H. H. Benton without bond—they to pay heirs such rate of interest as shall be agreed upon, until children become of age—and she remains unmarried—in such case money shall fall to my legal heirs."

The precise question is, What did the testator mean by "in such case"? In what case did he intend a part of the fund to be diverted from the wife to the children? The defendant in error offers this answer:

"According to the terms of the will, $2000 of the $10,000 life-insurance held in the New York Life Insurance Company is given to the unborn child, and

$8000 to May Benton. Her $8000, however, is to be held in trust until the children become of age and she remains unmarried. In such case the $8000 is to pass to the legal heirs. That is, if May Benton remains unmarried and the children become of age, then the money goes to the legal heirs; but it only goes to the legal heirs in the event of her remaining unmarried and the children becoming of age. When May Benton remarried that terminated the trusteeship. The remarriage made it impossible for the conditions to exist upon which the money devised to her should go to the heirs. It was given to her and her right to it could only be devested upon the occurrence of certain named conditions, and those conditions being made impossible by her remarriage, the trusteeship terminated and she was entitled to the money."

This explanation involves the inherent improbability that Benton intended his widow to receive a larger share of his property if she remarried than otherwise, and it fails to account for the language used or to exhibit any general and consistent purpose. It puts the testator in the attitude of saying that the money was to go to his wife, but until the happening of a stated event, which was spoken of as though expected to take place, it was to be held in trust by others, and then a part of it was to be paid to some one else. There is a manifest inconsistency in his first giving the money to his wife and then providing that she shall receive it only in case of her remarriage, which he must have regarded as the exceptional rather than the normal outcome of her widowhood.

On the other hand the interpretation originally suggested attributes to the testator a natural and orderly plan—he wished his wife to have the money, but during the minority of the children it was to be held in trust, she sharing the interest with them; when they became of age, in the usual and expected course of events she was to receive the entire fund in her own right, her husband evidently relying upon her, if still unmarried, to render them such financial aid as might be suitable;

Benton v. Benton.

but should she have remarried, being then presumably less dependent upon the legacy for her own support and less singly devoted to the welfare of the children, he preferred to make a definite provision for them. True, this idea was not expressed with literal accuracy. But the will shows on its face that it was hastily drawn. Its phrases are unstudied. Its introduction alludes to an illness from which recovery was doubtful. The sick man's thoughts were clearer than his words. Evidently he wrote or dictated without revision. He set the $8000 apart to his wife; then he arranged for the trustees to hold it until the children were of age, implying a payment to her at that time; then he imposed the condition—provided she remained unmarried. So far all is plain. Then apparently having in mind that the phrase he had used was "and she does not remarry," or some equivalent expression, he added "in such case"—that is, in case she remarries —"money shall fall to my legal heirs." This seems the simplest available explanation, and we adopt it for the purpose of the present case. Of course the parties may be by this time committed to some other construction, or the matter may be affected by other extraneous circumstances. But here nothing is involved but the face of the papers, and the question is one of pleading. The result already announced will be allowed to stand for the additional reasons stated, and the petition for a rehearing is denied.