Merrimack, }
Dec. 3, 1929. }

ALFRED W. LEVENSALER, *Ex'r*

*v.*

FRANK A. BATCHELDER, *Adm'r c. t. a.,* & *a.*

*Alfred W. Levensaler* and *Barton & Shulins,* for the plaintiff.

*Batchelder & Wheeler,* for the defendant Batchelder.

BRANCH, J.   The trial court ruled that in view of the established facts set forth above, the rights of the defendant Batchelder under the forty-four year old mortgage here involved were not barred by the statute of limitations, (P. L., *c.* 329, *ss.* 1, 5) and this ruling raises the only question of law disclosed by the record.   The fact relied upon by the defendant to sustain this ruling is that in 1922 the plaintiff's testator inserted in the covenants of warranty contained in his deed to Annie D. Mullaley an exception which had reference to this mortgage.

The conventional statement of the rule in regard to new promises which is obviously invoked here, is that a direct and unqualified admission by a debtor within the statutory period prior to the commencement of the action, of a subsisting debt which he is liable and willing to pay, is sufficient evidence of a new promise which will prevent the statute from operating as a bar to a recovery of the debt. *Barker* v. *Heath*, 74 N. H. 270, 272; *Engel* v. *Brown*, 69 N. H. 183; *Holt* v. *Gage*, 60 N. H. 536. All the recent cases indicate clearly that it is the new promise which may be inferred from the admission and not the admission itself that takes the case out of the statute. Thus, in regard to a partial payment, this court has said, "It is not the part payment which takes the case out of the statute, but the new promise of which it may be evidence; therefore payment of a part is not enough unless it is made under such circumstances that a promise to pay the remainder may reasonably be inferred from it." *Engel* v. *Brown*, *supra*, 185. In other words, the conduct of the debtor must be such as to justify an inference that a new promise was made and the inference must actually be drawn by the trier of facts before the bar of the statute will be overcome.

Upon the question, to whom must a new promise be made, there is a conflict of authority. Some courts hold that a new promise, although made to a stranger, is sufficient to take the debt out of the operation of the statute, but the weight of authority is to the effect that the new promise must be made, not to a stranger, but to a person having some tangible connection with the transaction, *e.g.* "to the creditor himself or to some one acting for him, or in privity with him, or to a party in interest, or to be communicated to the creditor, or made with reason to know that it would be communicated to and influence the creditor." 37 C. J. Tit. Limitation of Actions, *s.* 617. *Titus* v. *Ash*, 24 N. H. 319 is one of the cases cited in support of the rule that a new promise is sufficient though made to a stranger, and in that case it was said (*p.* 329) that "a promise and acknowledgment to a third person are clearly sufficient to take the case out of the statute and avoid the plea." The same rule seems to have been applied in *Betton* v. *Cutts*, 11 N. H. 170. In *Titus* v. *Ash*, however, the alleged new promise was made to the creditor's attorney. In *Betton* v. *Cutts*, *supra*, it was made after the death of the creditor to his daughter's husband. The daughter was clearly a party in interest, and if not made for the purpose of being communicated to her, it might have been found that the debtor had reason to know that it would be communicated to her and influence her conduct. It therefore appears

that when the court in *Titus* v. *Ash* spoke of "a third person" it was not dealing with a "stranger," and these cases can hardly be regarded as authority for the proposition that a new promise made to a stranger is sufficient. There appears to be no answer to the observation of the Pennsylvania court that "It is a perversion of the word promise to apply it to a declaration made to one who has no interest in or connection with the subject spoken of." *Kyle* v. *Wells,* 17 Pa. St. 286, 290, and in the absence of controlling authority to the contrary, the rule in this state is declared to be in accordance with that sanctioned by the weight of authority as above set forth.

In the present case the court reported no finding as to the existence of a new promise nor can it be assumed that such a finding was in fact made, for it is specifically stated that the ruling in question was based upon the "foregoing" or previously reported facts. The situation is similar to that which existed in the case of *Hatch* v. *Hillsgrove*, 83 N. H. 91, 98, where it was said, "We are of the opinion that the trial court thus purports to base its decree solely upon the facts reported; and that, therefore, the general finding for the plaintiff does not carry by implication the necessary supporting finding"— which was in that case that the plaintiff had no adequate remedy at law. It, therefore, follows that the ruling of the court in this case cannot be sustained unless it can be said as a matter of law that the only conclusion to be drawn from Edwin's conduct is that he made a new promise. *Engel* v. *Brown, supra,* 186. The facts do not compel such a conclusion. It might with equal force be urged that the reference to the mortgage "running to Robert Dawes" in the deed to Annie D. Mullaley was designed simply to call her attention to a known but supposedly innocuous cloud upon her record title and to avoid the possibility of future misunderstanding from that source. When Edwin's reference to this mortgage was made, Robert Dawes had been dead almost nine years, and no one had ever been appointed to execute his will. The only person who is definitely shown to have had an interest in the mortgage at that time was Edwin himself. By the terms of Robert's will, he took a one-half interest in the mortgage debt, and as an heir of his other brother Benjamin, he took a further interest in it, which was presumably a quarter. The idea that as mortgagor he intended to make a new promise to himself as mortgagee is too fanciful to command serious attention.

It might be found, however, that Annie D. Mullaley was a person to whom a valid new promise could be made. If she was not actually a party in interest, it might be found that she was a person

who would be likely to communicate the acknowledgment to a party in interest. Assuming that the statutory rules of descent were not superseded by deed or will, her precise status would depend upon whether her mother, Nellie E. Mullaley, was living when the deed was executed. Nellie was a sister of both Edwin A. and Benjamin F. Dawes, and at the time of Benjamin's death in 1915, she or her heirs apparently succeeded to a quarter interest in the mortgage debt. If she died intestate before the deed to Annie was given, then Annie, as one of her heirs, would have an interest in the mortgage. If she was living at that time, then an acknowledgment made to Annie would come within the class of those "made with reason to know that it would be communicated to and influence the creditor." It is also possible that the evidence may show that Annie was an entire stranger to the mortgage. If this appears to be the fact, then the acknowledgment made to her would not operate to defeat the bar of the statute, but if it appears that her status was such that a new promise might be made to her, then such a promise might be inferred from the acknowledgment.

It is plain that further proceedings in the superior court will be necessary, and the order here is

*Exception sustained.*

All concurred.

On REHEARING. After the foregoing opinion was filed, the defendant moved for a rehearing and argument was invited upon this motion.

*Batchelder & Wheeler (Mr. Batchelder* orally), for the motion.

*Alfred W. Levensaler* and *Barton & Shulins (Mr. Shulins* orally), opposed.

BRANCH, J. "No action for the recovery of real estate shall be brought after twenty years from the time the right to recover first accrued to the party claiming it, or to some person under whom he claims." P. L., *c.* 329, *s.* 1.

"Actions upon notes secured by mortgage of real estate may be brought so long as the plaintiff is entitled to bring an action upon the mortgage." *Ib., s.* 5.

It is the contention of the plaintiff, as we understand it, that under the terms of the mortgage, the mortgagor was definitely in default after 1889, when the last installment of the mortgage debt became due, and that a "right to recover" the mortgaged property either by a writ of entry or a bill for foreclosure then accrued to the mortgagee; that even though subsequent payments of interest interrupted the running of the statute, the rights of the mortgagee were barred thereby after the lapse of twenty years from the date of the last payment in 1901, and hence, that after 1921, no action for the recovery of the real estate could be maintained without proving a new promise. The status of the case with reference to the proof of a new promise was considered in the opinion heretofore filed.

At the time that opinion was written the court had not had the benefit of oral argument, and it now appears that a more fundamental question is involved, *i.e.*, whether the rights of the mortgagee came within the operation of the statute at all. Although the language of the present statute is broad enough to include any right to recover real estate by virtue of a mortgage, the authorities are clear to the effect that the statute will not operate to bar the rights of a mortgagee unless it is shown that the possession of the mortgagor has, for twenty years, been adverse to him. The reason for this rule is found in the language of the statutes which preceded the one now in force and the decisions thereunder.

By a statute approved June 19, 1805, it was provided that "no person or persons . . . shall make any entry into any lands, tenements or hereditaments . . . or shall sue or maintain any action for the recovery or obtaining possession thereof, unless such person or persons . . . or the person, or persons under whom they respectively claim, have been seized or possessed thereof within twenty years next before the making such entry or commencement of such suit, and in default thereof, such person or persons . . . shall forever after be excluded from making such entry, or from suing or maintaining an action for the recovery thereof." Session Laws, June, 1805, *p.* 14; 7 N. H. Laws 414.

In order to claim the protection of this statute, the proper plea in a real action was "that no person by, through, or under whom the demandant claims, has been seized or possessed of the land within twenty years, next before the commencement of this action," *Moore* v. *Frost*, 3 N. H. 126, 127, and the statute only operated to bar the rights of those who had not, within twenty years, had seizin or possession of the property in question. Thus, in *Barnard* v. *Edwards*,

4 N. H. 107, 109, it was said by *Richardson*, C. J., "We are of opinion that the statute of June 19, 1805, section 1, applies only to actions, entries and claims founded on some previous seizin or possession of the lands, tenements, or hereditaments demanded, from which seizin or possession the time of limitation may be dated."

It has also been held in this state from the earliest times that, "in contemplation of law, and with a view to the protection of the rights of the mortgagee by action, he is deemed to be the owner, and the mortgagor as being in possession under him." *Sheafe* v. *Gerry*, 18 N. H. 245, 247. "The mortgage, immediately upon its execution, vests in the mortgagee, and those claiming under him, the seizin as well as the title" of the estate. *Furbush* v. *Goodwin*, 29 N. H. 321, 332; *Chellis* v. *Stearns*, 22 N. H. 312, 314.

As a result of this conception of the legal situation arising upon the execution of a mortgage it was naturally held, under the statute of 1805, that in the absence of proof that the possession of the mortgagor has become hostile to that of the mortgagee, "the seizin of the latter is preserved by the permissive occupation of the former; and no length of time can constitute an effectual bar to his entry, or to the maintenance of any action that presupposes one." *Sheafe* v. *Gerry*, *supra*.

The statute of 1805 was superseded in 1842 by Revised Statutes, *c*. 181, *s*. 1, which reads as follows: "No action for the recovery of any real estate shall be maintained, unless such action is brought within twenty years after the right first accrued to the plaintiff or to any person under whom he claims, to commence an action for the recovery thereof." With only slight verbal changes this provision has remained in force down to the present time.

Although the act of 1842 made very considerable changes in the language of the law, its purpose was obviously similar to that of the statute of 1805, and from the beginning it seems to have been regarded as having exactly the same effect. In *Robie* v. *Flanders*, 33 N. H. 524, 528, this interpretation was definitely adopted and it was there said that the purpose of the general revision of the statutes was "merely to reënact the former limitation in briefer and simpler terms. . . The substance therefore of the two statutes is in reality exactly the same, although the phraseology is somewhat changed." In accord therewith is *Foster* v. *Marshall*, 22 N. H. 491, 495.

In *Howard* v. *Hildreth*, 18 N. H. 105, 107, when speaking of the act of 1842, it was said: "The statute, therefore, does not apply to a mortgage, at least not until the mortgagee elects to enforce his

title for the purpose of availing himself of his security," and in *Tripe* v. *Marcy*, 39 N. H. 439, the former rule in regard to mortgages was fully restated. It was there held that until a mortgagee elects to treat the possession of the mortgagor as a disseizin, or until the mortgagor actually disseizes the mortgagee by some unequivocal act hostile to his title, the possession of the mortgagor is to be regarded "as permissive, and bearing, in many respects, a close analogy to a strict tenancy at will or at sufferance, . . . the mortgagor is in with the privity and assent of the mortgagee, and in subordination to his title; . . . and until such actual disseizin by the act of the mortgagor, or by the election of the mortgagee, the possession is not adverse, but in privity with the mortgagee, and the statute of limitations does not begin to run."

The rule thus laid down has frequently been recognized and applied, and must be regarded as established law. *Hodgdon* v. *Shannon*, 44 N. H. 572, 578; *Clough* v. *Rowe*, 63 N. H. 562; *Perkins* v. *Eaton*, 64 N. H. 359; *Frye* v. *Hubbell*, 74 N. H. 358, 360.

Since the court found that the possession of Edwin A. Dawes was not adverse to the holder of the mortgage, the ruling that the mortgage was not barred by the statute of limitations was correct.

Although the effect of the foregoing rule, as a practical matter, is to remove mortgages, in most instances, from the operation of the statute of limitations, the consequences of this rule are in turn limited by another principle which is equally well settled and which has been stated as follows: "Twenty years unexplained possession by the mortgager bars the right of the mortgagee to the land upon a presumption that the mortgage debt has been discharged. So twenty years unexplained possession by the mortgagee bars the right to redeem upon the presumption that the right has been released or abandoned, and in some way lost." *Perley*, C. J., in *Green* v. *Cross*, 45 N. H. 574, 584; *Tripe* v. *Marcy*, 39 N. H. 439, 448, 449; *Clark* v. *Clough*, 65 N. H. 43, 78; *Frye* v. *Hubbell*, 74 N. H. 358, 360; but "this presumption is repelled by any act recognizing the validity of the mortgage." *Frye* v. *Hubbell*, *supra*; *Clark* v. *Clough*, *supra*; *Tripe* v. *Marcy*, *supra*. This principle furnishes the basis for the widely accepted rule of thumb that the rights of a mortgagee are barred after twenty years from the date of the last interest payment.

In the present case we must conclude that the presumption of payment which might have arisen from the mortgagor's unexplained occupation of the property for twenty years was repelled by other competent evidence, for it is found that "Edwin never paid anything

on the mortgage after 1901." It follows that the trial court was right in its ruling that "the defendant Batchelder was entitled to the fund to be administered as a part of the estate of Robert J. Dawes," provided the amount of the fund does not exceed the amount of the mortgage debt, with interest. The order must, therefore, be

*Decree for the defendant.*

All concurred.