No. 20,799.

EDGAR A. ROHRBAUGH, *Appellant*, V. ALEXANDER CUNNINGHAM
et al., *Appellees*.

SYLLABUS BY THE COURT.

ACTION—*On Promissory Note—Pleadings—Demurrer—Practice.* The pleadings examined and held that instead of sustaining a demurrer to plaintiff's reply and rendering judgment in favor of defendants for costs, the demurrer should' have been carried back to the answer and sustained thereto, and judgment given in plaintiff's favor for the amount due on the note sued upon.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed July 7, 1917. Reversed.

*Lee Monroe, James A. McClure,* and *C. M. Monroe,* all of Topeka, for the appellant.

*Harry E. Snyder,* of Council Grove, for the appellees.

Rohrbaugh v. Cunningham.

The opinion of the court was delivered by

PORTER, J.: The trial court sustained a demurrer to plaintiff's reply to the defendant's answer. Plaintiff elected to stand on his reply and appeals.

The action was to recover on a promissory note for $1000, dated January 28, 1908, due in one year, payable to plaintiff's order, signed by the defendants. The action was not brought until December 19, 1913.

The answer admits execution of the note and avers that it was given in connection with a written contract of the same date between the parties in settlement of a controversy then existing between them, and that it was agreed that the payment of the note was conditional and should be made from the proceeds of the sale of a certain mill property at Council Grove, and not until this property was sold or traded, or until the plaintiff should elect to take the property under the terms of the contract. The answer then alleged that the mill property had never been sold or traded as provided in the contract; that plaintiff had never made any effort to sell it or trade it; had never elected to purchase it under his option provided in the contract; that defendants had used every reasonable effort on their part to sell or trade it; that at the time the note and contract were executed the property was subject to a mortgage, and that by reason of the inability of defendants to sell or trade it and plaintiff's neglect and refusal to do so the mortgage had been foreclosed and the property sold and lost to the defendants. It was alleged that by reason of these facts the note has never become due and payable and that it was given without consideration.

A copy of the contract of settlement attached to the answer recites in substance that the defendants, the Cunninghams and Munkers, had, under an agreement of November 7, 1907, agreed to convey to the plaintiff the mill property in Council Grove in exchange for certain land belonging to the plaintiff in Logan county, and that he had given to the defendants his note for $3800, secured by a mortgage on the mill property, which it appears was to cover incumbrances on the Logan county land and $500 boot money. The agreement then recites that in final settlement of all controversies then existing between the

parties the defendants were to take back the deed to the mill property which had been placed in escrow but never delivered, and the deed was to be destroyed. They surrendered to the plaintiff his note for $3800 and mortgage and he agreed to dismiss with prejudice to any future action a cause pending in the district court of Logan county against the defendants in which he had sought to set aside his deed to the Logan county land, and he was to relinquish all further claim or interest in the Logan county land to the defendants, and in consideration of these matters and the settlement of their controversies the defendants executed and delivered to him the promissory note sued on in this action.

There was a further agreement in the contract of settlement that the parties were each to do all they reasonably could to find a purchaser for the mill property, and the Cunninghams and Munkers were to receive first the sum of $5000 of the proceeds, and the balance was to be equally divided between them and Rohrbaugh. They agreed to keep the mill property insured and pay the taxes for the first year, and if for any reason the property should not be disposed of within one year the expense of maintaining the property, including taxes and insurance and interest, was to be borne equally between them and Rohrbaugh.

The particular clause upon which the answer based its defense is as follows:

"Seventh. It is further understood and agreed by and between the parties hereto that the said party of the second part shall have the right and an option to purchase said mill property at Council Grove, Kansas, upon payment by him to said first parties of the sum of $5,000.00 at any time before said mill property is sold or disposed of by them, and if not sold to said second party upon the terms mentioned or to anyone else within one year from this date, then the time for payment of said $1,000.00 note shall be extended until such time as said mill property may be sold or traded."·

To this answer the plaintiff filed a reply admitting the execution of the contract and going a little further into the details of the contract of November 7, 1907, and alleging that under it he was to trade to defendants 2560 acres of land in Logan county in exchange for the mill property, but that the Cunninghams and Munkers were unable to comply with their agreement and furnish a merchantable title; that the note

sued on was given in consideration of the settlement of his suit to set aside the trade and in payment of his interest in the Logan county land. The reply also alleged that the defendants had sold and conveyed whatever interest they might have had in the property in Council Grove, and also that it had been judicially determined in a certain action in the district court of Morris county that they never owned the mill property or any title thereto. It alleged that the defendants had never offered to convey the lots to the plaintiff since the execution of the note sued on, nor requested him to exercise his option to purchase the same, and further, that a reasonable time for maturing the note had long since elapsed and that the note was due and payable at the time of the commencement of the action.

If the only question before us was whether the demurrer to the reply should have been overruled, we would have no hesitation in saying that it was error to sustain the demurrer and to render judgment against the plaintiff. The demurrer admits that the defendants lost whatever title they had to the mill property; that many years before the suit had been brought they had made it impossible to comply with any of the options or privileges contained in the contract of settlement, by which under possible, but obviously improbable, contingencies and conditions the plaintiff might acquire an interest in the mill property or in the proceeds of its sale. The reply fully met the defense set up in the answer, but we do not place our decision upon the sufficiency of the reply.

In our opinion, it would require a diligent search of cases to find one more appropriate for the application of the general rule that a demurrer to a pleading searches the whole record. The answer of the defendants stated no defense. Stripped of its verbiage it amounts to this: That the note has never become due and payable because by the terms of the contemporaneous agreement the time of payment was made conditional. The seventh clause, which is relied upon in support of this contention, merely gives to Rohrbaugh an option to purchase the mill property from the makers of the note for the sum of $5000 at any time before the property is sold or disposed of by them, "and if not sold to said second party [Rohrbaugh] upon the terms mentioned or to any one else within one year

from this date, then the time for payment of said $1000 note shall be extended until such time as said mill property may be sold or traded."

In another paragraph of the answer it is admitted that the defendants lost whatever title they had to the property by foreclosure because of the failure to pay the mortgage and tax liens accruing upon the property.

The rule is well settled that a note of this kind is payable after a reasonable time for the performance of the condition, and that the failure of the makers to perform their part of the condition within a reasonable time renders them liable upon it. (*Brown v. Cruse,* 90 Kan. 306, 133 Pac. 865.) In the opinion in that case a quotation from 9 Cyc. 615 applies to the facts in the present case:

"Where a debt is in fact due, and it is agreed that it shall be paid upon the happening of a future event, and the event does not happen, it is held that the law implies a promise to pay within a reasonable time." (p. 308.)

In *Brown v. Cruse,* supra, the note was given for labor, and it was said in the opinion that—

"It could not reasonably have been the intention of the parties that the makers were to pay or not as they should choose. It is more in accord with justice and fair dealing to assume that they, with the plaintiff, were to make fair endeavor to derive the amount from the patent or the sale of machines, and that their failure or refusal so to do within a reasonable time should not wipe out the debt but leave them liable for its payment." (p. 308.)

Apparently the plaintiff signed the contract in the belief that the transaction was intended to settle all controversies between the parties; but whether by the defendants' procuring or otherwise, the instrument was so drawn that, if defendants' construction of it is the true one, the plaintiff was only getting out of one controversy and getting into a number of others. Whatever title or ownership defendants had in the mill property was about to slip from them by impending foreclosure proceedings. If the intention of defendants, by the provisions in the contract giving plaintiff an option to purchase or trade for the mill property or share in the proceeds of its sale, was to make the note never payable unless the option should be exercised or unless the land were sold, it is fortunate for the plaintiff that the law will not favor such a construction of the

contract. A contract of this nature can not be construed so
that it shall never be payable at all, but only as an extension
of credit. (*Greenstreet v. Cheatum,* 99 Kan. 290, 161 Pac. 596.)
In that case payment was to be made when a certain residence
could be sold for a stated price. It was never sold, and about
two years after the agreement was made the house was
burned. In the opinion it was said:

"The mortgage debt which the defendant assumed to pay became an
actual liability when the property was transferred to her. The payment
of the same was postponed to an indefinite time. The fact that a sale
was not made for the sum named did not cancel the debt. Neither did
the destruction of the house discharge the obligation or any part of it.
It only demonstrated that the contingency named as the time of payment
was unlikely ever to happen." (p. 295.)

It was held that under the circumstances a reasonable time
for payment had elapsed. In the opinion the case of *Nunez v.
Dautel,* 86 U. S. 560, is cited, where the contract was to pay a
sum of money as soon as the crop could be sold or the money
could be raised from any other source, and where it was said:

"It could not have been the intention of the parties that if the crop
were destroyed, or from any other cause could never be sold, and the de-
fendants could not procure the money from any other source, the debt
should never be paid. Such a result would be a mockery of justice."
(p. 562.)

To the same effect is *Benton v. Benton,* 78 Kan. 366, 97 Pac.
378, where the obligation was to pay an acknowledged debt as
soon as the obligor could. In the opinion it was said:

"It is entirely inconsistent with the spirit and purpose of the engage-
ment to suppose for a moment that the parties contemplated that the
avowed obligation should never be capable of enforcement, even to the
extent of the obligor's ability to pay, unless he should become financially
able to meet the entire obligation at once." (p. 370.)

Other cases to the same effect are cited in the opinion in
the Greenstreet case, *supra.*

In the present case the plaintiff waited before bringing
suit on the note until less than sixty days remained of the five-
year statute of limitations. If the contention of the defend-
ants is sound, they are to retain the 2560 acres of Logan county
land, while the plaintiff takes nothing. The $1000 note was
given in consideration of his conveyance of that land to them.

19—101 Kan.

Rohrbaugh v. Cunningham.

It represents all that he can ever get out of the transaction. It is seriously argued in the brief of defendants that the defense in the answer to the effect that the note has never become due and payable must be sustained. On the contrary, we think the conclusion of law therein stated has no basis upon the facts recited in the answer.

In *Johnson v. Wynne*, 64 Kan. 138, 142, 67 Pac. 549, it was held to be "the established practice in this state, sustainable upon principle as well as authority, that a demurrer lodged against a pleading searches the record," and that the demurrer should be carried back to the former insufficient petition and sustained thereto, citing *The State, ex rel., v. Comm'rs of Pawnee Co.*, 12 Kan. 426; *Stratton v. McCandless*, 27 Kan. 296. "The general rule is that a demurrer opens the whole record so that judgment must be rendered against the first party whose pleadings are defective in substance." (31 Cyc. 338.)

We need not consider whether the reply is good or bad. See 31 Cyc. 340, where it is said:

"So it makes no difference whether the pleading demurred to is good or bad, but the first defective pleading will nevertheless be searched out."

In this case the court should have carried the demurrer back to the answer and sustained the demurrer thereto and should have rendered judgment for the plaintiff for the amount sued for.

The judgment will be reversed and remanded with directions to proceed accordingly.