JOHN T. JONES v. CHRISTOPHER EISLER, *Admr.*

*Error from Franklin County.*

A note dated April 20th, 1860, in which the maker promises to pay "when he receives it from the government for losses sustained in August 1856 or as soon as otherwise convenient," a sum certain for labor mentioned therein to have been done, *construed* not to be a conditional obligation; *Held* that it was payable in any event in a reasonable time; *Held* that what was such reasonable time was determined by the parties, by the payment, by the obligor, thereon, on the 18th day of June, A. D. 1860, of a certain sum, which was endorsed thereon; *Held* that such payment was equivalent to a demand, and the money became due and the statute of limitation began to run from that date.

Where a payment on such note was pleaded as having been made "on the 10th of Nov," without stating the year, *held* that it was not enough that it could be inferred that it was in A. D. 1860, that as a matter of allegation in pleading, a court could not interpolate those nor any other figures; that facts must be plainly and concisely stated.

*Held* that the court erred in sustaining a demurrer to the answer in such case, setting up the statute of limitation.

The "non-intercourse act" of Congress of June 30th, 1854, does not prohibit all contracts between white men and Indians.

An answer to a petition on a promissory note setting forth that the defendant is an "Ottawa Indian," lives with that tribe on the "Ottawa Reserve" in said Franklin county, where the note was executed, does not contain sufficient allegations to bring the case within the prohibitions of that act of Congress; *Held* that the sustaining of a demurrer to such answer was not error.

*Held* that an Ottawa Indian may be sued.

This action was brought September 11th, 1863, in Franklin County District Court, on a note, as follows: "$237.37. Ottawa Creek, April 20th, 1860. For value received (in

cutting stone) by Gouliep Anders, I promise to pay when I receive it from government for losses sustained in August 1856, or as soon as otherwise convenient, the sum of two hundred and thirty-seven dollars and thirty-seven cents. John T. Jones," which note bore the following endorsements, viz: "April 9th, 1860, received of the within note twenty dollars." "June 18th, 1860, received of the within five dollars." "Nov. 10th, received of the within two dollars and fifty cents,"—each signed. The petition set forth a copy of the note and of the endorsements, setting forth the amount claimed due thereon, and asked judgment.

The answer contained, 1st: a general denial except as to the execution of the note. 2d: it set up the three year statute of limitation, and 3d: averred that the payee of the note was a white man and the defendant an "Indian adopted into and belonging to the Ottawa tribe of Indians," and "lives on the Ottawa Indian Reserve in said Franklin county, and with the said tribe." That the note was "executed on the said reserve," and also contained an allegation that "the court has not nor can it obtain for the purposes of this action jurisdiction either of the person of the defendant or of the subject matter."

To the second and third grounds of this answer a general demurrer was interposed setting forth the ground that they did not state sufficient facts, which demurrer was sustained as to both counts of the answer, to which ruling the defendants below excepted.

The issue made by the petition and first ground of answer was tried and judgment rendered for plaintiff below.

Upon the exception so taken the case was brought up for review by the defendant below.

*Goodin & Valentine*, for plaintiff in error.

*Wagstaff & Simpson*, for defendant in error.

*Goodin & Valentine*, for plaintiff in error, submitted a brief, making the following points:

1. *a.* The petition does not show that the cause of action accrued within three years. It shows that it did not. The note was made April 20th, 1860. One endorsement on it dated April 9th, 1860, another June A. D. 1860, and a third simply Nov. 10th, without stating the year. The petition does not aver the year of this endorsement. The court will not supply an allegation by inference. "Everything shall be taken most strongly against the party pleading."

The petition should show affirmatively *who* made the payments.

Under section 96 of the Code a demurrer may be interposed to such a petition. The defects in this petition may be taken advantage of in any stage of the proceedings. (*Sec.* 98). *See Coles* v. *Kelsey*, 2 *Texas*, 541.

*b.* The petition is defective in not averring a performance of the conditions precedent, mentioned in the note, or either of them.

If "otherwise convenient" used in the note is to be construed "when able," then plaintiff below should have alleged that defendant was able, or that it was convenient. 2 *Greenleaf's Ev.*, *sec.* 440, *and note* 1; *Angell on Lim.*, *sec.* 113, *note* 2; 1 *Pars. Contr.*, 309, *and note*; 2 *Id.*, 372, *and note w*, *and cases*. The performance of the other condition mentioned in the note also should have been pleaded.

Tipton *v.* Lewis, (10 Ohio, S. 88,) is not a parallel case. The manner in which the two conditions in the note before the court here, are coupled, determines that the promise to pay "when *otherwise* convenient," was intended to carry the idea of when otherwise *able*. Such was not the Ohio case. In that case the conditional words were struck out virtually as meaningless. That cannot be done in this case.

But they raise a condition the performance of which should have been pleaded. Even if the note were not conditional it would be due only in a reasonable time, and that a reasonable time had elapsed should have been pleaded. 2 *Pars Contr.* 173, *note e, and cases*; *Sansom* v. *Rhodes*, 8 *Scott*, 544.

2. The answer 1st, denies, 2d, pleads the three year limitation law, and 3d, pleads the " non-intercourse law" of the Congress. This answer was demurred to, and the demurrer to the second and third counts sustained.

*a.* The pleading of the statute of limitations was sufficient. *Nash's Pl.*, 286; 3 *Chitty Pl.*, 941, 956, 1030.

*b.* The third count is sufficient. It sets forth substantially that the note was made in contravention of the act of Congress of June 30th, 1854. 4 *U. S. Stat. at Large*, 729, *sec.* 1, 2, 3, 7, 8, 9.

The Ottawa Reserve was at the time the note was made a part of the "Indian country" and not within the jurisdiction of the state or territory. *See treaty with Ottawas, Aug. 30th*, 1831, *ratified April 6th*, 1832; 7 *Stat. at Large*, 361, *sec.* 9, 11. The United States have held the provisions of that treaty inviolable as to this reserve. *See Organic Act, sec.* 19, *Act of Admission, sec.* 1. The Ottawas have never relinquished their tribal jurisdiction over the reserve.

*c.* Lowry *v.* Weaver, (4 McLean R., 82,) is not analogous to the one at bar. In that, the question was whether an Indian living in an *individual* capacity on lands granted to *him alone*, in Indiana, in the absence of treaty stipulations or other law on the subject, was within the jurisdiction of the state. In this, the question is whether an Indian living on a reserve given to the tribe in a national capacity and occupied by them in such capacity, on a reserve excluded by treaty from state or territorial limits, is within the limits of the jurisdiction of the territory or state of Kansas, and not affected by the non-intercourse acts. If the non-intercourse acts do not apply to the Indians on
18

that reserve, then why are they not liable to prosecution for bigamy and " all manner of abominations." They have a private code of laws, and practically are independent of our laws.

3. *a.* The statute of limitations began to run at the date of the note. The endorsements on the note prove nothing, standing alone. To make them available it must in addition be shown that they are in defendant's hand writing, made with his consent, or made about the time they bear date, and when it was against the interest of defendant to have made them. *Angell on Lim.,* sec. 241, 242; 1 *Greenl. Ev.,* sec. 121, 122.

The note stood then as payable on demand. As to when the statute begins to run on such notes, *see Angell on Lim.,* secs. 95, 96, 97; 2 *Pars Contr.,* 372.

If the statute did not commence to run at the date of the note, then it is submitted whether any cause of action has yet accrued.

*b.* But admit the endorsements as evidence of payment, and only one proves anything bearing upon this question, viz: that of June, A. D. 1860. If the note was due from that date the statute ran against the note till June, A. D. 1863, before this suit was brought.

No brief appears in the papers of the case for defendant in error.

*By the Court,* CROZIER, C. J.

The first question presented by the record is, when did the note sued on become due? The note is not a conditional one. The maker owed the payee who had performed labor for him. He declares in the paper that he has received the consideration, which all must admit was a valuable one. The existence of the debt was not made to depend upon a condition or contingency. Everything necessary to constitute a promissory note, except the time of payment, is clearly expressed. As to the time the language is pecu-

liar. It could not have been contemplated that if Jones never got his money from the government, or never should be in a situation when he could conveniently pay, that the money never was to be payable. Jones evidently expected, within a reasonable time to get money from the government, or failing in that, within a like time, it would otherwise be convenient to pay. After having performed work to the full amount of the note, it could not have been intended that Andres should never get his money unless Jones got his from the government, or should find it otherwise convenient to pay. The intention of the parties doubtless was, that it should in any event be payable in a reasonable time, and such is the legal effect of the instrument.

What was such reasonable time, was in this case determined by the parties themselves. A payment was made June 18th, 1860, about sixty days after the note was made. The parties considered this a reasonable time, and it would have been so in law in case a formal demand had been made. The payment was equivalent, under the circumstances, to a demand. The money then became due, at least as early as June 18th, 1860, at which time the statute of limitation would begin to run. The maker pleaded the statute, which was a good defense, unless there was a subsequent payment or written acknowledgment within three years preceding the commencement of the suit. The petition alleges a payment on the 10th of November, without stating any year. As a matter of fact, a court or jury might infer that it was in 1860, but as a matter of allegation in pleading, the court could not interpolate those or any other figures in pleading; facts must be plainly and concisely stated, not inferentially stated. Had the petition averred a payment on the 10th of November 1860, the court or jury upon a trial might have been justified in finding as a fact, upon the production of the note with all of the endorsements, that a payment had been made at that time,

or parol testimony might have been introduced to show it. But no proof upon that subject could have been received against the objection of the defendant, for the reason that there was no allegation of the time of the payment.

The court below, therefore, erred in sustaining the demurrer to the answer, setting up the statute of limitations.

As to the third defense, the court is of opinion that the allegations do not bring the case within the provisions of the act of Congress of June 30th, 1834. If it were admitted that the place where this note was made was without the limits of the then territory of Kansas, and was the "Indian country," as defined by the act referred to, and that the maker was an Indian belonging to the tribe occupying that locality, it would not follow that his contract with a white man would be void; a contract made out of the territory is not for that reason void. A contract between a white man and an Indian made in the "Indian country," would be void if prohibited by the act of Congress. But the act does not prohibit all contracts between white men and Indians. When made under certain circumstances they are prohibited, but the allegations in the answer do not bring this one within the prohibition. An Indian may build a house in the "Indian country," and may, with the consent of the United States authorities employ carpenters and masons to do the work; and when the work has been performed, that assent will be presumed. The answer alleges that because the defendant is an Indian, the court had no jurisdiction of his person. To this we reply, in the language of a distinguished modern jurist, that, "his right to be sued is unquestionable." It may not be such a right as he would care to exercise very frequently, it being a rather expensive luxury, but it is one in the full enjoyment of which the law will afford him ample protection whenever he shall, under proper circumstances, insist upon it. The court below did not err in sustaining the demurrer to the third defense. The judgment will be re-

versed for error in sustaining the demurrer to the second defense.

All the justices concurring.