John F. Dille, Appellant, v. O. H. Longwell, Appellee.

**BILLS AND NOTES:** Maturity—Happening of Contingency. A
1　promissory note, concededly given for a valuable consideration, and clearly contemplating payment at *some* time, but payable *"when the present indebtedness of Highland Park Company is paid,"* becomes absolutely due immediately after the lapse of a reasonable time in which to pay such debts, even though they are not then paid.

**ESTOPPEL:** Profiting from One's Own Wrong. One who prevents
2　the happening of an event which would fix liability upon him may not, when sued, allege the non-happening of such event. So held where a note was payable on the happening of a contingency, and the maker prevented the happening of the same.

*Appeal from Polk District Court.*—Hubert Utterback, Judge.

March 10, 1920.

THIS is a suit at law for judgment on a promissory note. The essential defense was that the maturing of the note depended upon a contingency which had not happened. Verdict was directed for defendant, and plaintiff appeals. —*Reversed and remanded.*

*Nourse & Nourse,* for appellant.

*Clark & Byers,* for appellee.

SALINGER, J.—I. The note sued on bears a date. While it promises to pay "after date," no time for payment is stated by day, month, or year. The promise is to pay after date, "when the present indebtedness of Highland Park Company is paid." The court directed verdict for defendant. By so doing, it held that, as matter of law, the note was not yet due and payable, because the debts referred to in the note had not been paid, and held further that it would never become collectable until said debts were paid.

1. BILLS AND NOTES: maturity: happening of contingency.

If we must hold that the note can be collected now, even if said indebtedness still subsists, it will become unnecessary to pass upon whether same has been paid. Therefore, we address ourselves first to the legal effect of the promise in the note, though it be assumed that said debts of the company have not been discharged.

II. In *Kiskadden v. Allen,* 7 Colo. 206, recovery was permitted, though the note had words fully as indefinite as the ones found in the note before us. The same is true of *Dobbins v. Oberman,* 17 Neb. 163 (22 N. W. 356), of *Stevens v. Blunt,* 7 Mass. 240, and possibly of other cases relied on by appellant. We prefer to act without regard to these cases, because, while the qualifying words considered in them are as indefinite as is "when the debts of the company are paid," they qualified a definite promise to pay by

a stated date (a promise not found in the note before us). And the decisions in these cases turned largely, if not wholly, on the proposition that the qualification could not cancel the definite promise to pay by a stated time.

III. But in *Randall v. Johnson*, 59 Miss. 317, the promise was to pay in 90 days after the return trip of a certain vessel. This is quite as uncertain and contingent as is a promise by defendant to make payment when the debts of the company had been discharged. The *Randall* case holds that, though the vessel was lost, payment became due in 90 days after it failed to return within the time usually needed for the return trip. We see no distinction in principle between this and the instant case.

IV. This defendant gave this note in part payment for receiving a controlling interest in the company, and he assumed control and management of that company. In the course of the opinion, we shall speak fully on the effect of acquiring this interest and this control. For the present, we have to say that, after defendant got control and management, it became his duty to see to it that the company paid its said indebtedness. This being so, the case stands as if defendant had promised to pay the note when his management brought it about that the debts of the company were paid. Failure to keep promises less definite and binding than this has not been effective to delay maturity.

In the early case of *Barnard v. Cushing*, 4 Metc. (Mass.) 230, there was a statement:

"We agree not to compel payment for the amount of this note, but to receive the same when convenient for the promisors to pay."

It was held that no action would lie on the promise; but it would seem that this has been practically overruled in *Page v. Cook*, 164 Mass. 116. In that last case, the clause was: "On demand after date I promise to pay

\* \* \* payable when payor and payee mutually agree."
This was held to be a note payable on demand after such
agreement was made, or ought in reason to have been made.
Speaking to the *Barnard* case, it is said:

"Possibly, if the question arose now, a different result
might be reached from that arrived at in that case."

A like view of the *Barnard* case seems to be taken in
*Pistel v. Imperial Mut. L. Ins. Co.*, 88 Md. 552 (43 L. R. A.
219). Certain it is that the trend of the later cases is to
hold that agreements to pay when convenient mean that pay-
ment is due within a reasonable time after date. That is
the holding of the *Pistel* case, supra. In *Works v. Hershey*,
35 Iowa 340, at 343, cited by appellee, the promise was that
the note should be paid at Cincinnati "when convenient."
We held that these words "cannot be construed to nullify
the words of the instrument, viz.: 'On demand I promise to
pay,'" and that, "if any force be given to them, it will be
that the maker bound himself to pay within a reasonable
time after the date of the note." That, too, is the decision
in *Lewis v. Tipton*, 10 Ohio St. 88, and the case approves
the text in 1 Edwards on Bills, Notes, and Negotiable In-
struments (3d Ed.) 154 (Note):

"And it is now adjudged that a note by which the
maker promised to pay a certain sum 'when it is conven-
ient' is due within a reasonable time."

The same rule is announced in *Benton v. Benton*, 78
Kan. 366 (97 Pac. 378), another case cited by appellee, in
speaking to a promise to pay "as soon as he can." It is
said this is of the same effect as a promise to pay when it
would be convenient, and that a promise to pay "when con-
venient" is held to be tantamount to an agreement to pay
within a reasonable time, upon the theory that otherwise
the practical effect would be to give the promisor the op-
tion to refuse payment altogether. In *Smithers v. Junker*,
41 Fed. 101, the promise was:

"For value received I promise to pay,　*　*　*　payable at my convenience, and upon this express condition, that I am to be the sole judge of such convenience and time of payment."

It was held this does not contemplate the money shall become due only at the pleasure of the maker, without regard to lapse of time or the rights of payee, but that the maker is to have a reasonable time, to be determined by himself, in which to pay the note.

Why is a promise that one will pay when it is convenient for him less indefinite and contingent than the promise of a manager that he will pay his own note as soon as he causes the debts of the corporation managed by him to be paid? If a promise to pay when convenient is, in law, a promise to pay within a reasonable time after date, why is not that true of a promise to pay when certain debts have been caused to be paid?

In *Cota v. Buck*, 48 Mass. 588, the promise was to make payment as soon as the maker could realize the money out of property he had purchased of the payee. In *Ubsdell v. Cunningham*, 22 Mo. 124, it was to pay as soon as the maker collected from certain accounts described. In *Nunez v. Dautel*, 86 U. S. 560, payment was to be made "as soon as the crop can be sold or the money raised from any other source." In *Crooker v. Holmes*, 65 Me. 195, the note was to be paid when the maker sold his place, where he was then living. In *Sears v. Wright*, 24 Me. 278, and in *Goodloe v. Taylor*, 3 Hawks (N. C.) 458, the qualifying words made payment depend, respectively, upon the time when the maker sold certain logs, and when a house being builded for him was completed. In all of these cases, it was held that the note became payable within a reasonable time after date. Surely, the promise in each of these was as indefinite and contingent as the promise at bar.

V.　A naked briefing of these decisions falls far short

of meeting the position of the appellee as forcefully as the reasoning which underlies this class of decisions. The underlying reasoning is that such provisions should be construed liberally in favor of the payee (*Smithers v. Junker,* 41 Fed. 101), and that, when all the provisions of the instrument are liberally considered together, it is plain there was no intention to agree,—say, that, if the maker did not sell his house, this would cancel his promise to pay,—no intention to agree, in effect, that the promisor had "the option to refuse payment altogether" (*Benton v. Benton,* 78 Kan. 366 [97 Pac. 378, at 379]), nor that the maker had the sole right to say "when it would suit his convenience to pay the debt" (*Smithers v. Junker,* 41 Fed. 101). And it rules it should be held it was the intention, say, on such qualification as that payment was to be made when the maker sold his house, that he must pay after he had failed to sell his house within a reasonable time.

5-a

Such words of qualification are merely an arrangement that the maker is not to pay immediately, and may delay payment until a reasonable time has elapsed, wherein, say, he can collect certain accounts. The qualification merely "prescribes the time of payment by reference, not to days and years, but to a reasonable time for the collection of the accounts." *Ubsdell v. Cunningham,* 22 Mo. 124. If payment of a debt is to be made upon the happening of a future event, that is merely an agreement that it will be convenient to make payment when that event occurs, and not an agreement that no payment need be made within a reasonable time, even if such event fails to happen. *De Wolfe v. French,* 51 Me. 420; *Crooker v. Holmes,* 65 Me. 195, at 197. To like effect is *Lewis v. Tipton,* 10 Ohio St. 88, and *Nunez v. Dautel,* 86 U. S. 560. In that, payment was to be made "as soon as the crop can be sold or the money raised from any other source." And the court held that "the stip-

ulation secured to the defendants a reasonable amount of time within which to procure, in one mode or the other, the means necessary to meet the liability;" and that the debt would become due upon the occurrence of either of the events named, or after a reasonable time had lapsed for either selling the crop or raising money from some other source. In *Smithers v. Junker*, 41 Fed. 101, where the note was made payable at the maker's convenience, and on express condition that he was to be the sole judge of such convenience, it was held to effect no more than the giving of a reasonable time, to be determined by the maker, wherein to pay the note.

The weight of authority construes such agreements to intend nothing except the deferring of payment until such time as gives the promisor a reasonable time wherein to cause the contingency to happen. That is to say, if he promise to pay when he sold certain logs, the understanding and agreement is merely that he has a reasonable time wherein to perform the duty to make the sale of the logs. And see *Nuncz v. Dautel*, 86 U. S. 560.

### 5-b

*Nuncz v. Dautel*, 86 U. S. 560, furnishes a keystone statement of a general rule which controls the issues at bar. That rule is that if, on fair construction, the whole of the provisions indicate that both parties believe a stated thing is certain to occur at some time, and have stipulated that payment is to be made when that thing does happen, then, if that prove a mistaken anticipation, and the thing, in fact, never does happen, it is no agreement that payment should, therefore, never be made, but that it should be made within a reasonable time after it is known that the thing which was anticipated to happen will never happen, or, at least, that it has not yet happened. The fair effect of *De Wolfe v. French*, 51 Me. 420, is that, where both parties believe a future event must or will happen, and there is no

intention that, in any circumstances, the debt is never to be paid, then the fact that such future event has failed to happen within a reasonable time makes the fixing of payment with reference to such event the mere selection of a convenient time for payment, and the promisor is not released, though such event do not happen, and must pay after a reasonable time for it to happen has lapsed without its happening. In the *Nunez* case, the promise was to pay "as soon as the crops can be sold." No doubt, both parties believed that a crop would be sold, and the decision is broad enough to sustain the proposition that, if it was agreed to make payment when the crop, say, for a given year had been harvested and sold, this would be an agreement made in the belief that the crop would mature and would be sold, and that, though there was a crop failure, that would not cancel the promise to pay, but would merely postpone the time of payment to such time as, in reason, there would have been a crop to be sold, had it not failed. In *Randall v. Johnson,* 59 Miss. 317, where the promise was to make payment after a vessel made her first return trip, and it transpired she was lost at sea, the court said that it would be "a mockery of justice to hold that, because the schooner was lost at sea, and, therefore, had not made her first return trip, the appellee lost his debt." Its effect is to affirm the rule which governs where that which both parties expected to happen did not happen, as distinguished from the one that controls an agreement that no payment whatever be made unless a stated thing does happen. In *Cota v. Buck,* 48 Mass. 588, the test was said to be "whether the undertaking is to pay the amount at all events at some time which must certainly come." In *Crooker v. Holmes,* 65 Me. 195, at 197, it was ruled, in approval of *De Wolfe v. French,* 51 Me. 420:

"That, where a debt is due absolutely, and the happening of a future event is fixed upon as a convenient time for

payment merely, and the future event does not happen as contemplated, the law implies a promise to pay within a reasonable time."

VI. The note states that value was given for it. It has the words, "I promise to pay." It fixes a penalty for failure to pay at maturity. Without reference to when, if ever, the debt of the company shall be paid, there is a promise to pay interest at the rate of five per cent per annum, annually, with penalty if said interest is not then paid. With due regard to these provisions as a whole, we cannot hold that it was deemed immaterial how long a time had passed wherein to pay the debts of the company, and that it was understood no payment was ever to be made if that indebtedness was never discharged. Here is an acknowledgment that the maker is indebted to the payee. It was held, in *Benton v. Benton,* 78 Kan. 366 (97 Pac. 378), cited by appellee, that such acknowledgment of being indebted controls the qualification that payment is to be made as soon as the maker can, and creates a definite time of payment: to wit, a reasonable time after the date of the note. It is said that such agreements as this must be held to be an obligation to pay within a reasonable time, "upon the theory that otherwise the practical effect would be to give the promisor the option to refuse payment altogether;" and that, where it is acknowledged that a debt was created, rather than a gift made, there should be no construction which postpones payment for more than a reasonable time after the date of the note. To that effect is *Works v. Hershey,* 35 Iowa 340, at 343, also cited by appellee. It was said in *Lewis v. Tipton,* 10 Ohio St. 88, that, since the note recites that it was for value received, and it so appears that the payee parted with something valuable to obtain the promise, "is it reasonable to suppose that it was parted with and received as a mere gratuity, which would be the fact if there was to be no legal obligation to return an

equivalent? Why go through the useless formality of giving and receiving a written paper which was not, after all, to evidence any right or create any obligation  *  *  * if there never was to be any payment except at the option of the signer?"

As effective a summary as any is found in *Benton v. Benton,* 78 Kans. 366 (97 Pac. 378, at 379). In *Jones v. Eisler,* 3 Kans. 134, the promise was to pay "when I receive it from government for losses sustained in August, 1856, or as soon as otherwise convenient." The *Benton* case quotes with approval from the *Jones* decision, as follows:

"When did the note sued on become due? The note is not a conditional one. The maker owed the payee, who had performed labor for him. He declares in the paper that he has received the consideration, which all must admit was a valuable one. The existence of the debt was not made to depend upon a condition or contingency. Everything necessary to constitute a promissory note, except the time of payment, is clearly expressed.  *  *  * It could not have been contemplated that, if Jones never got his money from the government, or never should be in a situation when he could conveniently pay, that the money never was to be payable. Jones evidently expected, within a reasonable time, to get the money from the government, or, failing in that, within a like time it would otherwise be convenient to pay. After having performed work to the full amount of the note, it could not have been intended that Anders should never get his money unless Jones got his from the government, or should find it otherwise convenient to pay. The intention of the parties doubtless was that it should, in any event, be payable in a reasonable time, and such is the legal effect of the instrument."

The case of *Smithers v. Junker,* 41 Fed. 101, is fairly to like effect. Its final conclusion is that, among other things, promise to make payment on account of value received nega-

tives any intention that certain qualifying words are in-
tended to destroy such promise.

### 6-a

The note absolutely promises to pay interest annually,
and agrees that, if interest is not so paid, such interest
shall draw interest. How can it be said the note was not
to be payable at all if the indebtedness of the Highland
Park Company was not discharged? If that was the in-
tention, then the maker took the chance of paying this in-
terest forever; for, if it was the bargain of defendant that
this note must run until the debt of this company was paid,
any decision that the note is to run on forever because said
indebtedness will never be paid would saddle defendant
with a perpetual interest charge. Additional to what we
have already set forth from *Lewis v. Tipton*, that decision
combats the construction for which appellee contends, on
the ground, for one, that, if it had been the intention to
make the promise wholly contingent, it was unnatural for
the parties to "fix a high rate of interest 'till paid.'"

VII. *Pistel v. Imperial Mut. L. Ins. Co.*, 88 Md. 552
(43 L. R. A. 219), cited by appellee, holds no more than
that, if certificates are agreed to be paid for at such price
as was paid for like certificates which have been
surrendered in the past, recovery on such agree-
ment is, in the absence of collusion or other
fraud, limited to the prices paid for said surrendered cer-
tificate, whatever they were. The case of *Cassidy v. Tay-
lor*, 4 Okla. 516 (46 Pac. 560), holds, in effect, that, where a
sum is due a partnership, an agreement between the part-
ners that payment to one of them should be made when the
partnership debt was paid in full, delays a right of the one
partner to sue until such full payment has been made.
And *Jones v. Eisler*, 3 Kans. 134, recognizes that these pe-
culiar facts are the turning point in the *Cassidy* case. We
are unable to find anything in *Ramot v. Schotenfils*, 15 Iowa

457, that supports appellee.  The case *Rollins v. Denver Club*, 43 Colo. 345 (96 Pac. 188), is strongly urged by appellee.  A careful analysis of the case discloses it is upon facts which differentiate it from such decisions as *Nunez v. Dautel*, without putting it into conflict with cases of the *Nunez* type.  The court concedes that, if a promise made that all dividends should be paid pro rata stood alone, cases such as that of *Nunez* might be pertinent.

The club was incorporated for social purposes purely, without aim to make pecuniary profit.  Its members, including plaintiff, made a subscription to raise a building fund.  The club promised to repay the members, with interest, "at the convenience and pleasure of the club."  The promise was further qualified by the statement that no demand would be made for payment, in whole or in part, until such payment could be "prudently discharged in the discretion of the board from the surplus revenue of the club."  All consideration of the question of contingent promise is quite incidental.  The decision involves somewhat the reasoning of the *Cassidy v. Taylor* case, because some consideration is given to the fact that the transaction has the aspect of a joint venture, or partnership.  And it is deemed material to point out that there was no promise to pay out of funds generally, but out of a specific fund.

The case turns largely upon a finding that, since plaintiff averred the discretion of the board had not been prudently exercised, that sufficient funds were on hand, and that still the board wrongfully refused to apply them in payment, it is made plain he did not understand he had an absolute agreement to repay, but was to be paid if there existed such surplus revenue as that an honest exercise of the discretion of the board demanded an application of such surplus to the payment of this obligation.  The court points out that practically all the evidence was directed to whether there had been an abuse of said discretion.  The final

conclusion is, in effect, that there was a failure to establish an improper exercise of discretion; that courts of equity are loath to interfere with the discretion of the directors of a private corporation concerning the declaration of dividends, and especially so where that corporation is not organized for pecuniary benefit, and where complaint of abuse of discretion is made by a member of the social corporation.

While there is language in *Glass v. Adoue*, 39 Tex. Civ. App. 21 (86 S. W. 798), which would seem to aid the appellee, an examination discloses that the point we are considering was not mooted. The only question tried out was whether the maker was, in fact, able to pay, it being assumed without dispute that he need not pay unless he was, in fact, able. Possibly, *Tootell, Ex Parte*, 4 Ves. Jr. *372, was rightly decided. The promise held to be purely contingent was:

"I hereby promise to pay  *  *  *  at such a period of time that my circumstances will admit without detriment to myself or family and not to be distressed upon any account whatsoever until such time that my circumstances will be as above described."

This was held, and probably rightly held, to be a conditional promise, which might or might not mature.

It may not be denied there is an exceptional case, here and there, which comes close to holding that, say, a promise to pay when one is able, or when one's circumstances will permit it, is purely conditional, and there never can be a recovery until the condition actually happens. See *Nelson v. Von Bonnhorst*, 29 Pa. 352; and *Salinas v. Wright*, 11 Tex. 572. But we think it has been shown that the great weight of authority goes at least so far as to allow a recovery on such agreement as the one at bar, even if the debts spoken to have, after reasonable opportunity to pay them, not been paid.

VIII. Were we to concede that the construction we have given the proposition of the note at bar ought not to obtain generally, it would still be a sound interpretation of the rights of these particular litigants.

2. ESTOPPEL: profiting from one's own wrong.

The maker of the note was, after he signed the same, virtually the owner of the Highland Park Company. It was his duty to bring about the payment of its debts. He seems to have made no attempt to have these debts paid. He reorganized his corporation into a new one, and so put the corporation which owed said debts out of existence, and deprived it of all power to pay through the agency of successful operation, or at all. He should not be permitted to defeat his note with the defense that this corporation had failed to pay those debts. To permit him to do that would be a clear violation of the rule that, where one prevents the happening of an event upon which his liability is to arise, action may be maintained against him, without proof that such event has happened. See *Hughes v. McEwen*, 112 Miss. 35 (72 So. 848, 849); *St. Louis D. Beef & Prov. Co. v. Maryland Cas. Co.*, 201 U. S. 173, 181; *Shulte v. Hennessey*, 40 Iowa 352; *Larned v. City of Dubuque*, 86 Iowa 166, 181; *Garbutt v. Citizens' L. & E. Assn.*, 84 Iowa 293, at 297; *Sears v. Wright*, 24 Me 278, at 280, and *Guire & Diehl v. Page*, 4 Serg. & R. (Pa.) 1. The case of *Crooker v. Holmes*, 65 Me. 195, at 199, speaks with peculiar persuasiveness in support of the pronouncement we have just made. And *Hughes v. McEwen*, 112 Miss. 35 (72 So. 848), is quite relevant. The court finds it to be plain "that it was the intention of both parties to make the note payable after 80 acres of land had been sold, and the purchase price of same paid." It states that the question before it is whether, where there is a debt owing, and the payment is postponed to a future time, which depends upon the happening of a future event, resting entirely within the discretion of the appellee, and

which event the appellee may never cause to happen, "appellee can defeat the payment of the debt due by her to appellant by never selling the land," and this though the debt is an absolute one, and is admitted by the appellee. It is said that:

"While there are some authorities to the contrary, the great weight of authority and the best-reasoned cases hold that, in cases of this kind, the debt becomes due absolutely within a reasonable time."

And, as indicated, that is our view.

IX. What is a reasonable time is a question of fact. *Capron v. Capron*, 44 Vt. 410, at 412; *Nunez v. Dautel*, 86 U. S. 560; *Lewis v. Tipton*, 10 Ohio St. 88. But we do not have that question to decide. For here, as in *Works v. Hershey*, 35 Iowa 340, 343, "there is no claim in the answer that a reasonable time had not been given defendant after the execution of the note for its payment."

We hold it was error to direct verdict for defendant.— *Reversed and remanded.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.