LUCY C. LONG et al., Appellants, v. NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Appellee.

INSURANCE: Deductions from Policy. Deductions from the face
1   value of a policy are justified: (1) When authorized by the statute law under which the policy was issued; or (2) when authorized by

the terms of the policy itself; or (3) when the deductions are legally pleadable as a set-off to an action on the policy. In such a case, it is quite immaterial that some *other* contract purporting to authorize such deductions is, for any reason, unenforcible.

**INSURANCE: Option to Pay Charges Against Policy.** The right of a policyholder *to pay or not to pay* certain accrued and accruing charges against the policy will not bear the construction that he may elect not to pay, and thereby prevent the charges from being deducted in an action on the policy, when it is manifest that the mutual intent attending the contract was that, if payment was made, the recovery on the policy would be correspondingly increased, and if payment was not made, the charges should be deducted from the policy when it matured.

**APPEAL AND ERROR: Harmless Error—Abandoned Issue.** The erroneous reception of evidence on an issue of reformation of an instrument is harmless, when the party praying reformation is found to be entitled to full relief without reformation.

*Appeal from Polk District Court.*—J. D. WALLINGFORD, Judge.

NOVEMBER 26, 1920.

THIS appeal complains that a policy for $1,000 on the life of William Long was subjected to unwarranted deductions, by means of sustaining a motion to direct verdict for defendant. Hence, plaintiff is the appellant.—*Affirmed.*

*Royal & Royal* and *William H. Long,* for appellant.

*Nourse & Nourse,* for appellee.

SALINGER, J.—I. It is one theory of the plaintiff appellant that, if there be any liability for which defendant may make deductions from the policy, such liability is created and made enforcible by the loan agreement, Exhibit 1, and that the said loan agreement is not available to defendant, because it altered the same in a material matter, after the instrument had been delivered to it. That loan agreement certifies that defendant "has advanced me as a loan $373.90." It is agreed in the instrument that this is to be paid "at signer's option." The paper authorized defendant

1. INSURANCE: deductions from policy.

to advance what finally came to amount to $195.56, in order to pay the difference between the premium due on the so-called old policy and the premium due on the new one, the policy in suit. The trial court deducted both these items.

Assume this instrument, Exhibit 1, was altered, and that, therefore, that instrument itself creates no lien on the policy in suit. Assume that, at least as to some phases, the said Exhibit 1 is unenforcible. That, of course, is all immaterial, if something other than said paper sustains the deductions which the court made.

Assume that, because defendant has materially altered this instrument, the paper gives no rights to defendant which it can affirmatively assert. The fact remains that, after said agreement was delivered, the insured received, without objection, and retained and paid premium on, the policy in suit, sent in exchange. Of course, the plaintiff does not deny that this new policy is valid enough to be sued upon. And in this case, no claim is made for any damages on account of the alleged alteration in the loan agreement, which was delivered before the new policy issued. In a word, under the issues, the deductions were rightly made, if it must be held that, without help from the loan agreement, the new policy warrants the deductions which were made.

The plaintiff insists consistently, and cites an opinion filed in this court in this suit for the insistence, that said loan agreement and the policy in suit are separate instruments, and that neither affects the other; insists this court has settled that, for that reason, it was not required that said loan agreement be attached to the policy in suit by copy. As said, plaintiff claims neither damages nor that the loan agreement should be enforced as it would be had it not been altered. What plaintiff does insist on is that, because of said alteration, the paper in which it was made is unenforcible, and that, therefore, whatsoever deductions are provided for in that altered instrument, said instrument will not avail to have such deductions collected from the proceeds of the policy in suit. Plaintiff asserts no rights under the altered instrument, but asks that it shall be eliminated from the case; unless, possibly, for the purposes of plaintiff's setting up the statute of limitations. Leaving that defense out of present consideration, and it is plain that, if defendant may

deduct what was deducted without any help from the loan agreement, the very existence of that agreement, much more so any alteration in it, becomes academic.

II.   On June 27, 1893, insured became a member of the Northwestern Life Association, a mutual benefit association organized on the assessment plan, and received therefrom a certificate of membership, under which there was payable, at the death of the insured, if then in good standing, and to Lucy Long and children, the beneficiaries named, such sum as an assessment on the members in good standing when insured died would, after deducting the cost of levying and collecting the assessment, produce the sum to be paid the beneficiaries, not more than $1,000, in any event.

The answer asserts that, after the receipt of said assessment certificate, the insurer reincorporated under the laws of Minnesota, taking the name of this defendant; that such reincorporation authorized it to issue ordinary life insurance policies upon the legal reserve plan, instead of the assessment plan, under which the original certificate had been issued.   To change said assessment certificate to a legal reserve ordinary life insurance policy raised the premium of $3.09 quarterly paid on the old certificate by $11.05 a year.   The insured consented to an exchange of the policy.   His beneficiary cannot well object, for she is suing upon the policy received in exchange.   The new policy, the one in suit, was made in terms subject to a Minnesota statute which became effective in 1901.   That statute provides that the insured may charge against "any such policy" as a lien, or in commutation thereof, a sum equal to the reserve by the Combined Experience Table of Mortality and 4 per cent interest, which should be held to the credit of the policy, had the same been originally issued under the provisions of this act, which lien shall be treated as a loan by said company to the insured upon said policy.

Provided that all such policies shall thereafter be charged with and pay a minimum net premium of at least the net premium indicated by the American Experience Table of Mortality, and 4 per cent interest or the Combined Experience Table of Mortality, with the same rate of interest for a policy of the same kind and class.   Assume, for the present, that this speaks

to the policy in suit, rather than the old assessment certificates
(and the charges were too big to be made out of the assessment
certificate, to say nothing of the $11.05 additional yearly pre-
mium to be loaned), and we have a binding statute provision to
charge the policy in suit with $373.90 deducted below, which
amount is shown to be the one that equals the reserve demanded
by the statute. If the issuance of the new policy was authorized
at all, there went with the authorization a requirement that suffi-
cient should be added to the premium paid on the old certificate
to equal the $195.56 which was deducted.

Once more treat the loan agreement as out of the case, and
we find in the hands of insured a new policy, and, on the theory
of plaintiff, the old certificate canceled.

That new policy comes to insured charged with $373.90 for
reserve, and with an obligation on his part to pay $11.05 a year
additional premium. If he failed to pay it, the policy died.
He knew the new policy was not being canceled or treated as
lapsed, though he had not paid the additional premium. The
policy expressly provides that, as a condition precedent to its
being paid, the assured must, for one thing, pay "any indebted-
ness to the company," which indebtedness is to be deducted from
the policy. If this were all, the statute and, as well, express
contract, obligate the insured and his beneficiary who sues on the
policy to suffer the deductions which the trial court made.

But the application is made part of the new policy. All that
is found in that is that insured is dealt with as of age of 42,
though he was at the time 9 years older than this, and an agree-
ment to pay a quarterly premium of $3.09.

The new policy refers also to the agreement of March 28,
1902 (the altered loan agreement), and stipulates that it shall
be a condition precedent that prompt payment shall be made
"as per" that agreement. Altered or no, that agreement con-
tains, independently of the part altered, an admission that de-
fendant has loaned insured $373.90. Altered or no, it contains
an authorization to advance the $11.05 annual increase in pre-
mium. The alteration is in that part of the writing which de-
clares on what policy these things shall be a lien. Concede this
destroys the contract right to make these things a lien on any
policy, and there remains the statute right and the common-law

right to counterclaim against the collection of the $1,000 promised in the policy, the sums due on the aforesaid heads. Though a contract gave no lien, yet one to whom another owes, may assert his debt when the first seeks to collect of him. If someone outside were in position to assert a right to the proceeds of the policy in suit, were there no lien, then it might become material that said contract provision as to lien had been altered. It might, for the sake of argument, then be asserted that the lien given defendant had been destroyed by the alteration, and that nothing else created a lien superior to that of the claimant.

Why may not a debt remain alive, at least for the purposes of set-off, even if something has destroyed a lien, or though the debt itself would be barred by the statute in affirmative action to collect?

III. One objection to Exhibit 1 was that it is no warrant for making the deductions referred to therein, because by other agreements that are part of the same transaction, it was

2. INSURANCE: option to pay charges against policy.

contracted that the amounts stated in Exhibit 1 were payable only at the option of insured, and that he and his beneficiary, the plaintiff, have elected not to pay the said amounts. (Perhaps this option agreement is in the loan agreement itself.) This presents the claim that the $373.90 cannot be collected or deducted, because insured had agreed to pay same "at my option." That cannot mean that one who admits a sum has been loaned him is at liberty to never repay. *Dille v. Longwell,* 188 Iowa 606. It must mean there is option to pay in some of the ways covered by the options tendered; and insured accepted Option 2, as to which no alteration has been made. This option was to pay the $373.90, and have the policy reduced to the amount of a reservation payable at any time, with interest, or to have that reservation deducted from the face of the policy when same matured, either by death or disability. It refers to the policy in suit, as we construe the record. And it has matured by death.

IV. By amendment to answer, it was pleaded to have been the mutual purpose of the new policy and of the said loan agreement that defendant should be liable only for the payment of $1,000 less $373.90, with interest at 4 per cent from March 28, 1902, computed annually, and less the sum of $11.05 annual

difference in premium, with interest at 4 per cent, computed an-
nually; and it was asked that, if there be any
other construction possible, that there be refor-
mation.   Evidence was introduced and ob-
jected to, tending to show that the reservation and the additional premiums respectively came to the two sums which the trial court deducted.   Nothing seems to have been done with the reformation issue.   The issue seems to have been abandoned.   But some evidence addressed to it is complained of.   If same was erroneously received, that does not affect the decision made on the grounds we have stated.

3. APPEAL AND ER-
ROR: harmless er-
ror: abandoned
issue.

V.   The policy provides that the sum of $1,000 shall be paid on conditions recited, and paid within 10 days after the directors accept satisfactory evidence of the occurrence of death during the continuance of the policy in force.   Insured died December 25, 1904.   He had met one condition, to wit, the payment of the $3.09 quarterly, and had paid same for the quarter ending two days later than the time of his death.   He has furnished proof of loss.   The defendant has 90 days after acceptance of proof of loss wherein to pay.   It was one objection to Exhibit 1 that the statute of limitations barred it, and that the bar existed at the time when plaintiff's cause of action accrued. We have sufficiently indicated why the plea is not effective. There was, at all events, the right of set-off.   And on the plea of the statute in a suit on the new policy, action on that policy did not become barred until 10 years had run after acceptance of proof of loss.—*Affirmed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.