**4. APPEAL AND ERROR: preservation of record: misconduct of trial judge.**

Other minor grounds are argued, but we deem them without merit. The judgment of conviction is, accordingly, affirmed.—*Affirmed.*

ARTHUR, C. J., and PRESTON and FAVILLE, JJ., concur.

---

J. L. TENNANT, Appellant, v. GEORGE A. DISSMORE, Appellee.

CONTRACTS: Construction—Special Payment Provisions—Forfeiture. One who, by contract, reserves the right to pay an obligation by applying, from time to time, a percentage of the income of a business, and pledges the said business as security, and who persistently and wrongfully refuses to make the application, is not released from liability for a deficiency resulting from the act of the creditor in levying on and selling said business for less than the full amount of the obligation.

*Appeal from Polk District Court.*—O. S. FRANKLIN, Judge.

NOVEMBER 11, 1924.

ACTION upon a contract, claiming judgment thereon. The substance of the defense was that the contract by its terms created only a contingent liability, and that the contingency

had not occurred, and that the plaintiff by his own act had rendered the occurrence thereof impossible. At the close of plaintiff's evidence, there was a directed verdict .for the defendant, and plaintiff appeals.—*Reversed.*

*Fred F. Keithley,* for appellant.

*A. L. Steele* and *Parrish, Cohen; Guthrie & Watters,* for appellee.

EVANS, J.—I.  The contract sued on was the following:

"Des Moines, Iowa, July 5th, '19.

"This contract made and entered into this 5th day of July, 1919, by and between J. L. Tennant of Des Moines, Iowa, party of the first part and Geo. A. Dissmore 'of Des Moines, Iowa, party of the second part, witnesseth: That in the deal which is now being consummated between George A. Dissmore and J. E. Davis for the purchase of the Security Mortgage Co., by the said Geo. A. Dissmore, a $4,000.00 mortgage is being purchased from J. L. Tennant by the said Geo. A. Dissmore for delivery to J. E. Davis. The amount of $3,125.00 is the agreed purchase price of this mortgage by Geo. A. Dissmore. The payment of which amount is to be made out of the business of the Security Mortgage Company by the payment of 25 per cent out of all business of the company from and after January 1st, 1920. The said amount of 25 per cent to be computed and paid on the first day of each month from and after the first day of January, 1920. It is understood and agreed that the said J. L. Tennant shall have security on the Security Mortgage Co. and its business for the payment of the $3,125.00 to be paid as herein stated. It is further understood that no payments are to be made by the said Geo. A. Dissmore to said J. L. Tennant until the $4,000.00 mortgage on the Monona County land or its equivalent are transferred to the said J. E. Davis. As soon however as J. E. Davis makes a receipt for the $4,000.00 mortgage or its equivalent then the said Geo. A. Dissmore is to pay to J. L. Tennant all of the percentage moneys which he has held for J. L. Tennant to apply on the $3,125.00. It is further

understood and agreed that the indebtedness of $3,125.00 shall draw interest at the rate of 6 per cent from and after the date of this contract. It is further agreed that in event the said Geo. A. Dissmore sells or disposes of the Security Mortgage Company the whole amount of the $3,125.00 less the credits as made is to fall due and become payable. However, if the said Geo. A. Dissmore continues the business it is agreed that he will not be called upon to pay the $3,125.00 except out of the profits arising from the Security Mortgage Company's business and in the manner above expressed.

"Signed in duplicate the day and year above written.

"[Signed]    J. L. Tennant.

"Geo. A. Dissmore."

When read alone, the foregoing contract is somewhat obscure in its terms. Read in the light of the surroundings of the parties, it becomes intelligible. From the pleadings and the evidence it is made to appear that, on the date of this contract, the defendant purchased from one Davis the business of the Security Mortgage Company, for a consideration of $5,500. In such transaction, Davis was represented by the plaintiff, Tennant, as an agent. Tennant was the owner of a mortgage of $4,000 which he proposed to sell to Dissmore for $3,125, and Davis proposed to accept said mortgage from Dissmore at par, as a payment upon his contract of purchase. A written contract to such effect was entered into between Davis and Dissmore on even date with the contract sued on. This arrangement was carried out, and Dissmore received a credit from Davis on his contract of purchase for $4,000 on the purchase price. Dissmore's promise to pay the $3,125 to Tennant was in the terms of the written contract above set forth, and not otherwise. There was a delay of many months before the $4,000 mortgage was turned over to Davis and credit given therefor to Dissmore; but no claim of prejudice or damage is made on that account. After full performance by Tennant on his part, he requested performance by Dissmore of the contract above set out. He asked for an accounting of the receipts and profits of the business and for a payment to himself of 25 per cent thereof. This was refused by

Dissmore. Thereupon, Tennant brought a suit in equity, to compel an accounting and to fix by decree the amount due him from Dissmore. In resistance to such suit, Dissmore contended that the receipts ·of the business were all exhausted in expenditures, and that there was nothing to divide. He charged his salary as a part of the running expenses. The court refused allowance of his salary, and found that 25 per cent of the proceeds of the business up to December, 1922, amounted to $473.77, and decreed that plaintiff have judgment therefor. There was no appeal from this decree. Neither did Dissmore perform the same, but refused to do so. The decree awarded special execution against the property and business of the Security Mortgage Company. Ten months later, Tennant. caused special execution to be issued and levied upon the property and business of this company, and the same was sold under execution for the sum of $710.

The question put to ·us, as appellee, Dissmore, presents it, is, which of ·the parties was at fault in causing the sale of the Security Mortgage Company? It is ·his contention that the appellant, Tennant, wrongfully caused the sale thereof, and is, therefore, estopped to claim anything further under his contract.

The appellee never paid anything under this contract.· He continued to claim his salary as a charge against the business, even after the court had decreed that he was not entitled to it. He refused to pay the $473 which the court had decreed was due to the plaintiff. The plaintiff, appellant, waited ten months before proceeding to enforce collection. Under the terms of the contract, payment was to be made pro rata out of the business as long as the business continued. In the, event of the disposal of the business, payment was to be made unconditionally. We deem it clear that the evidence in the record was sufficient to entitle the plaintiff to go to the jury, at least, and to warrant a finding by the jury that the conduct of Dissmore in withholding from Tennant the amount. due him was wrongful, and that he thereby lost the benefit of the contingency made by the contract for his protection, and that the execution sale by Tennant was justified because of such wrongful conduct. Whether the evi-

dence was sufficient to warrant the court in directing a verdict in favor of the plaintiff is a question not before us.

As an abstract proposition, it was not permissible to the defendant to so conduct himself that the plaintiff could get his due from him only *by* execution, and yet claim release from his contract *because* of the execution. We think the motion to direct a verdict was improperly sustained. *Dille v. Longwell,* 188 Iowa 606; Elliott on Contracts (1913 Ed.), Section 1914.

II. The plaintiff offered evidence to the effect that he had produced offers to Dissmore for the purchase of the business in a greater sum than that paid for the business by Dissmore. Objection to this offered testimony was sustained, and complaint is made of the ruling.

The ruling of the court was that the evidence was not admissible "at this time." We are not prepared to say that there was anything in the state of the evidence at the time of the offer that made the evidence material. We can readily see how it might become material in the further development of the case, but we see no particular function which it would serve upon the record as it then stood.

For the reason already indicated, the judgment entered below is reversed.—*Reversed.*

ARTHUR, C. J., and PRESTON and FAVILLE, JJ., concur.